## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

HAROLD LIFF, )
      Plaintiff )
    )
v. )
    )
    )
LIBERTY MUTUAL INSURANCE )
COMPANY, aka )
LIBERTY LIFE ASSURANCE )
COMPANY OF BOSTON & )
THE AMERISOURCE BERGEN )
CORPORATION LONG TERM )
DISABILITY PLAN & )
AMERISOURCEBERGEN )
CORPORATION, aka )
AMERISOURCEBERGEN DRUG )
CORPORATION )
      Defendants )
    )
    )

# 05 - 1 1 6 7 2 WGY
## COMPLAINT

MAGISTRATE JUDGE _Alexander_

RECEIPT # _____
AMOUNT $ _750.00_
SUMMONS ISSUED ✓
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _CMG_
DATE _8-12-05_

## INTRODUCTION

1.    Plaintiff, Harold Liff, ( "Mr. Liff"), brings this action against the Defendants, Liberty

Mutual Insurance Company, aka Liberty Life Assurance Company of Boston, ( Liberty)

and AmerisourceBergen Corporation Long Term Disability Plan, ("Plan"), and

AmerisourceBergen Corporation, aka AmerisourceBergen Drug Corporation

(AmerisourceBergen) (collectively referred to as "Defendants") for violation of the

Employment Retirement Income and Security Act of 1974, as amended, 29 U.S.C. § §

1001 *et. seq.* ("ERISA"). Mr. Liff is a participant in an ERISA welfare benefit plan that

1

was issued to AmerisourceBergen Corporation (AmerisourceBergen"), and underwritten and insured by Liberty. The name of the welfare benefit plan is The AmerisourceBergen Corporation Long-Term Disability Plan . The Plan number is GF3-830-004041-01.

2.    This Complaint challenges: (1) the Defendants unlawful denial of Mr. Liff's claim for Long Term Disability ("LTD") total disability benefits in violation of the terms of the plan requirements without appropriate justification and without granting him a full and fair review of his claim for benefits; and (2) AmerisourceBergen's having provided incomplete and or inaccurate and misleading information to Liberty regarding Mr. Liff's employment status; and (3) Liberty's reliance upon information from AmerisourceBergen it knew or should have known, after a reasonable investigation, was inaccurate in order to deny Mr. Liff's claim for benefits in an attempt to deprive him of the appropriate LTD benefits he is due; and (4) Liberty's failure to provide a reasonable claims procedure and conduct an adequate investigation into the merits of Mr. Liff's claim.

3.    Mr. Liff is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4.    This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

2

5.    Mr. Liff is a 64 year-old individual who currently resides in Lexington, Massachusetts.
      Mr. Liff is a vested participant in a Liberty employee benefit plan, within the meaning of
      29 U.S.C. § 1002 (2)(7). Mr. Liff has standing to bring this action under 29 U.S.C. §
      1132(a).

6.    The defendant, Liberty, is a for-profit corporation with its principal place of business at
      Boston, Massachusetts. Liberty transacts business in Massachusetts and insures and
      underwrites the Plan under which Mr. Liff is suing. Liberty is the party responsible for
      processing claims made under the Plan and investigating making a final determination as
      to Plan participants' eligibility for LTD benefits.

7.    At all times relevant to the claims asserted in this Complaint, Liberty purported to act as
      an ERISA claims fiduciary with respect to participants of the Plan, generally, and
      specifically, with respect to Mr. Liff, within the meaning of ERISA.

8.    The Plan under which Mr. Liff is suing is a "long term disability plan" issued by Liberty
      to defendant AmerisourceBergen. The Group Plan Number is GF3-830-004041-01. (**See
      Exhibit A).**

9.    AmerisourceBergen is a foreign corporation with its principal place of business at
      Chesterbrook, Pennsylvania. At all times relevant to the claims asserted in this
      Complaint, AmerisourceBergen was the employer of Mr. Liff and administrator of the
      Plan.

10.   At all times relevant to the claims asserted in this Complaint, AmerisourceBergen
      purported to act as an ERISA claims fiduciary with respect to participants of the Plan,
      generally, and specifically, with respect to Mr. Liff, within the meaning of ERISA

3

## STATEMENT OF FACTS

### Insurance, Entitlement, Definitions of Disability, Discretion

11.    In October 1995, Mr. Liff began working as a software developer at ADDS Inc, which subsequently changed its name to Telepharmacy Solutions, Inc. in February 2000. Telepharmacy Solutions was acquired by AmerisourceBergen Corporation in January 2002.

12.    Under the terms of the acquisition agreement between Telepharmacy Solutions Inc. and AmerisourceBergen, Telepharmacy Solutions employees became AmerisourceBergen employees on January 1, 2002 with their benefits and other employee rights to be calculated as if they had been AmerisourceBergen employees since the date they were originally hired by Telepharmacy Solutions, Inc.

13.    As applied to Mr. Liff, under the terms of the acquisition agreement between Telepharmacy Solutions and AmerisourceBergen, Mr. Liff was to be treated by the AmeriSourceBergen benefit plan as if he had been an AmerisourceBergen employee since his original date of hire with Telepharmacy Solutions, Inc in 1995.

14.    Liberty both funds and administers the Plan under which Mr. Liff is suing.

15.    The Plan does not contain any provisions giving independent and final discretion to Liberty to determine eligibility for benefits or to interpret the terms of the Plan.

16.    The Plan provides for the payment of LTD benefits when an insured person becomes totally disabled.

17.    The Plan defines total disability in the following manner:

" Disability" or "Disabled" means that during the elimination period and the next 36

4

months of Disability the Covered Person, as a result of Injury or Sickness, is unable to

perform the Material and Substantial Duties of his Own Occupation and thereafter, the

Covered Person is unable to perform, with reasonable continuity, the Material and

Substantial Duties of Any Occupation."

18.    Under the Plan, benefits are payable until the insured is no longer disabled, or until the

age of 65.

19.    Except for the definition, of "Disability or Disabled" quoted above in this Complaint, the

Plan contains no other definition or explanation of the terms disability.

20.    The Plan contains the following language concerning Pre-existing condition exclusion:

"This policy will not cover any Disability or Partial Disability:

1. Which is caused or contributed to by, or results from a Pre-Existing Condition

and

2. Which begins in the first 12 months immediately after the Covered Person's

effective date of coverage.

Pre-Existing Condition means a condition resulting from an Injury or Sickness for which

the Covered Person is diagnosed or received Treatment within the three months prior to

the Covered Person's effective date of coverage."

21.    If Mr. Liff's claim for benefits under the Plan had been approved, Mr. Liff would have

been entitled to a monthly benefit of approximately $3,804.

## Mr. Liff's Claim for LTD Benefits

22.    Mr. Liff presented a timely claim to Liberty, asserting that he is an insured person, that he

became totally disabled while insured, and that he is entitled under the Plan to LTD

5

benefits for the period of time beginning in December 2003, 180 days after his last day of work on June 6, 2003, and continuing thereafter without interruption through the present, and continuing in the future until he reaches the age of 65 or is no longer disabled.

## Mr. Liff's Application for LTD Benefits

23. Mr. Liff suffers from diabetes mellitus and chronic renal insufficiency and has received treatment from Dr. Eugene Clerkin and other doctors at the Lahey Clinic, Burlington, MA, for many years.

24. Beginning in the spring of 2003, due to the steady progression of his illness which increasingly had reduced his ability to work, Mr. Liff began discussing with AmerisourceBergen management his need to stop working.

25. The scheduled date of Mr. Liff's last day of work, June 6, 2003 was chosen by AmerisourceBergen management in consultation with Mr. Liff. AmerisourceBergen management told Mr. Liff they believed he would be entitled to LTD benefits under the Plan.

26. On or about October 1, 2003 Mr. Liff applied for LTD benefits under the Plan.

27. On or about October 28, 2003 Ms. Monica Dube, Disability Case Manager for Liberty wrote to Mr. Liff stating that "We have completed a thorough review of your eligibility for disability benefits, and have determined that benefits are not payable. Pinellas County's [sic] Long Term Disability Benefits includes exclusions concerning pre-existing conditions...

You have submitted a claim with a diagnosis of Diabetes, Hypertension and Chronic Renal Insufficiency. We have confirmed your effective date for Long Term Disability

6

coverage is July 1, 2002. Your disability occurred on June 9, 2003 which is within twelve months from your effective date, therefore we conducted a pre-existing condition investigation relative to your effective date of coverage and medical treatment...We have confirmed that the condition for which you are now claiming disability was Pre-Existing..."

28.     Liberty applied the pre-existing illness exclusion provision of the policy to Mr. Liff's claim stating that he did not have coverage under the policy until July 1, 2002.

29.     Liberty in deciding the effective date of Mr. Liff's coverage relied on a memo dated October 17, 2003 written by Paul Pescatore, Executive Vice President of Telepharmacy Solutions, Inc. and sent to Ms. Dube.

30.     Mr. Pescatore's memo stated in part: " Dr. Harold J. Liff has been an employee of Telepharmacy Solutions, Inc. Since 1995. During that period he participated in the medical/dental insurance benefits provided by the company. These benefits did not include Long Term Disability. At the end of 2001, Telepharmacy Solutions was acquired by AmerisourceBergen and all employees of the company became Amerisource Bergen employees with an employee start date back to the original date of hire at Telepharmacy Solutions. On July 2, 2002 all Telepharmacy employees became eligible to partake of AmerisourceBergen benefits which included basic Long Term Disability insurance..."

## Mr. Liff's Appeal of Liberty's Denial of His Benefits

31.     On April 19, 2004, Mr. Liff, through counsel, appealed Liberty's denial of his LTD benefits.

32.     In his appeal, Mr. Liff informed Liberty that the memo sent by Paul Pescatore was

7

incorrect and that under the terms of the agreement between Telepharmacy Solutions Inc. and AmerisourceBergen, Telepharmacy Solutions employees became AmerisourceBergen employees on January 1, 2002 with their benefits and all other employee rights to be calculated as if they had been AmerisourceBergen employees since the date they were originally hired by Telepharmacy Solutions, Inc.

33. In his appeal, Mr. Liff informed Liberty that according to the terms of the Telepharmacy Solutions agreement with AmerisourceBergen, Mr. Liff was to be covered by the AmeriSourceBergen benefit plan with benefits to be determined as if he had been an employee of AmerisourceBergen since his original date of hire with Telepharmacy Solutions, Inc in 1995 and therefore the decision to deny his benefits by applying the pre-existing condition clause in the policy was in error.

34. Counsel for Mr. Liff contacted both Liberty and AmerisourceBergen on several occasions and requested that they investigate the terms of the acquisition of Telepharmacy Solutions by AmerisourceBergen and its effect on the seniority and benefit status of Mr. Liff.

35. Under the terms of the Plan, Telepharmacy Solutions should have been treated as an associated company with an effective date of benefits to Mr. Liff as of the date of his hire in 1995.

**Liberty Upheld the Prior Denial**

36. On June 24, 2004 Heather Carignan, Appeals Review Consultant from Liberty wrote to Mr. Liff upholding the prior denial of Mr. Liff's claim for benefits.

37. Liberty did not dispute that Mr. Liff meets the definition of disabled within the policy. The sole basis of its denial was the application of the pre-existing illness exclusion clause

to Mr. Liff's claim.

38.    AmerisourceBergen gave incorrect information to Liberty regarding the terms of the
       merger with Telepharmacy Solutions with regard to the benefit status of Telepharmacy
       employees.

39.    Liberty did not investigate the terms of the merger and continued to rely only upon Mr.
       Pescatore's memo of October 17, 2003 even though it had been brought to their attention
       that the memo was inaccurate.

40.    Liberty's relied upon information it had reason to know was incomplete and misleading
       from AmerisourceBergen in order to deny Mr. Liff's claim for benefits in an attempt to
       deprive him of the appropriate LTD benefits he is due. Liberty failed to provide Mr. Liff a
       full and fair review of his claim for LTD benefits and to properly investigate Mr. Liff's
       claims regarding his effective date of coverage.

41.    Liberty failed to treat Telepharmacy employees as AmerisourceBergen employees from
       their date of hire and failed to treat Telepharmacy as an associated company under the
       terms of the Plan.

42.    Mr. Liff has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

43.    Liberty has failed to meet the minimum requirements for the denial of Mr. Liff's LTD
       benefits, in violation of ERISA, 29 U.S. C. § 1133, which requires that upon a denial of
       benefits, the administrative review procedure must include a reasonable opportunity for a
       full and fair review by the appropriate named fiduciary of the decision denying the claim.

44.    Liberty also failed to meet the Plan requirement for review of claims that have been
       denied.

9

45. The self-serving nature of Liberty's decision that Mr. Liff 's benefits must be denied due to the application of the pre-existing condition clause in the Plan is illuminated by the fact that Liberty admits that Mr. Liff is disabled as defined in the plan and yet they have elected to rely on misleading information from AmerisourceBergen and apply a later date for his effective date of insurance and thereby apply the pre-existing condition clause.

46. The decision to deny Mr. Liff's benefits was wrongful, unreasonable, irrational, contrary to the evidence, contrary to the terms of the Plan and contrary to law.

47. Defendants were influenced by its financial conflict of interest, as both the administrator of the Plan and the payor of benefits thereunder, when it denied Mr. Liff's benefits.

48. Due to the unlawful denial of benefits under ERISA, Mr. Liff has lost his rightful long term disability benefits.

49. Mr. Liff has also suffered emotional distress and an exacerbation of his physical condition as a result of Liberty's actions.

50. Due to the unlawful denial of benefits under ERISA, Mr. Liff has also lost the use of his long term disability benefits.

51. Having exhausted the administrative procedures provided by Liberty, Mr. Liff now brings this action.

## FIRST CAUSE OF ACTION
### ( Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

52. Mr. Liff realleges each of the paragraphs above as if fully set forth herein.

53. The Plan is a contract.

54. Mr. Liff has performed all of his obligations under the contract.

10

55.    29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought—

(1) by a participant of beneficiary-

(A) for the relief provided for in subsection ( c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

56.    The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132 (a) (1) (B).

57.    In accordance with 29 U.S.C. § 1132 , Mr. Liff is entitled to be paid benefits under the Plan based upon his disabled status from and after June 2003 and continuing into the future.

58.    The Defendants have refused to provide Mr. Liff with these disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

59.    As a direct and proximate result of this breach, Mr. Liff has lost the principal and the use of his rightful LTD benefits.

**SECOND CAUSE OF ACTION**
**( Equitable Relief as to Defendant AmeriSource Bergen)**

11

60. Mr. Liff realleges each of the paragraphs above as if fully set forth herein.

61.    29 U.S.C. § 1132(a)(3)(B)(i)and (ii) states that:

A civil action may be brought—

(3) by a participant, beneficiary, or fiduciary

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

(B) to obtain other appropriate equitable relief

(i) to redress such violations or

(ii) to enforce any provisions of this subchapter or the terms of the plan;

62. In accordance with 29 U.S.C. § 1132(a)(3)(B), Mr. Liff is entitled to equitable relief

63. Mr. Liff seeks equitable relief ordering AmerisourceBergen to fully disclose all

information regarding the terms of the acquisition of Telepharmacy Solutions including

but not limited to any and all agreements regarding the benefit status of Telepharmacy

Solutions employees.

### THIRD  CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

64. Mr. Liff realleges each of the paragraphs above as if fully set forth herein.

65. Under the standards applicable to ERISA, Mr. Liff deserves to recover "a reasonable

attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29

U.S.C. § 1132(g).

66. The Defendants have the ability to satisfy the award.

67. Mr. Liff's conduct of this action is in the interests of all participants who subscribe to the

Plan, and the relief granted hereunder will benefit all participants.

12

68.   The Defendant's have acted in bad faith in denying Mr. Liff's benefits under the Plan.

69.   The award of attorneys' fees against the Defendants will deter others acting under the
      similar circumstances.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)   Declare, adjudge and decree that Mr. Liff is entitled to ongoing LTD benefits as
      calculated under the terms of the Plan.

(2)   Award Mr. Liff the full amount of unpaid benefits under the Plan to which he is
      entitled, together with such pre-judgment interest as may be allowed by law.

(3)   Order that the Defendants make restitution to Mr. Liff in the amount of any losses
      sustained by Mr. Liff in consequence of the wrongful conduct alleged herein,
      together with prejudgment interest.

(4)   Award Mr. Liff the cost of this action and reasonable attorneys' fees; and

(5)   Award such other relief as the court deems just and reasonable.

Date:  July 25, 2005                   Respectfully submitted for the Plaintiff,

                                  Harold Liff

                                       By: _____

                                       Mark Bronstein
                                       BBO No. 058640
                                       M. Katherine Sullivan
                                       BBO No. 649239
                                       LAW OFFICE OF MARK BRONSTEIN
                                       288 Walnut Street, Suite 120
                                       Newton, MA 02458
                                       617-244-5551

13

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DEBORAH SIROTKIN BUTLER

## DEFENDANTS

CHRYSLER CORPORATION

**(b)** County of Residence of First Listed Plaintiff    Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)  (781)284-2768
Jennifer M. Lamanna, Esq., Ercolini & Lamanna
454 Broadway - Suite 306, Revere, MA    02151

Attorneys (If Known)

05 11679 JLT

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                            and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☒ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

Appeal to District

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Section 1332
Brief description of cause:  Plaintiff suffered injuries due to the Defendants negligent design, breach of warranty  of the 2000 Dodge Neon.

## VII. REQUESTED IN    ☐ CHECK IF THIS IS A CLASS ACTION    DEMAND $ 650,000.00    CHECK YES only if demanded in complaint:

**COMPLAINT:**    UNDER F.R.C.P. 23    JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY
(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## POLICY REISSUE AGREEMENT

**SPONSOR:**            **AmerisourceBergen Corporation**

**POLICY NUMBER:**      **GF3-830-004041-01**

**EFFECTIVE DATE:**     **July 1, 2002**

As of the above effective date, Liberty Life Assurance Company of Boston has issued a new Group Policy herein referred to as the new policy, to the Sponsor. The new policy replaces a policy bearing the number GF3-830-004041-01.

The new policy is a continuation of some of the coverage under the replaced policy. Any benefit maximums under the new policy will be reduced by benefits paid or payable under the old policy. Nothing in the new policy will negate or change any action taken or rights incurred before the effective date of the new policy.

Benefits payable for claims arising prior to the effective date of the new policy will be paid in accordance with the terms of the replaced policy. Benefits payable for any claim arising on or after the effective date of the new policy will be paid in accordance with the terms of the new policy.

However, if a covered person is not at work on the effective date of the new policy, any increase in or addition to benefits in such policy will be subject to the "Delayed Effective Date" provision of the new policy.

The Sponsor hereby accepts the new policy.

Liberty Life Assurance Company of Boston

Accepted by the Sponsor on:

_____ , 2002

(AmerisourceBergen Corporation)

By:

_____

(Signature)

_____

(Title)

# GROUP DISABILITY INCOME POLICY

**Sponsor:**          AmerisourceBergen Corporation

**Policy Number:**   GF3-830-004041-01

**Effective Date:**   July 1, 2002

**Governing Jurisdiction** is **Pennsylvania** and subject to the laws of that State.

**Premiums** are due and payable monthly on the first day of each month.

**Policy Anniversaries** shall occur each January 1st beginning in 2004. *

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay the benefits provided by this policy in accordance with its provisions. This policy provides Long Term Disability coverage(s).

## PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Person's agent. Under no circumstances will the Sponsor be deemed the agent of Liberty.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02117.

*   Policy anniversary changed effective October 1, 2002

### NON-PARTICIPATING

**Form ADOP**

## TABLE OF CONTENTS

**SECTION 1**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **SCHEDULE OF BENEFITS**

**SECTION 2**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **DEFINITIONS**

**SECTION 3**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ELIGIBILITY AND EFFECTIVE DATES**

**SECTION 4**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **DISABILITY INCOME BENEFITS**

**SECTION 5**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **EXCLUSIONS**

**SECTION 6**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **TERMINATION PROVISIONS**

**SECTION 7**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **GENERAL PROVISIONS**

**SECTION 8**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PREMIUMS**

**SECTION 9**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **APPLICATION**

# SECTION 1 - SCHEDULE OF BENEFITS

## ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS

### Minimum Hourly Requirement:

Employees working a minimum of 30 regularly scheduled hours per week

### Long Term Disability Benefits:

Class 1:   All Exempt and Non-Exempt, Non-Union Associates and All Sacramento Union Associates participating in the Core Plan

Class 2:   All Exempt and Non-Exempt, Non-Union Associates and All Sacramento Union Associates electing the Buy-Up Plan

Note:   temporary and seasonal Employees and Employees who are not United States citizens or legal residents working in the United States are not covered under this policy.

### Eligibility Waiting Period:

### Applicable to PharMerica Employees:

1. If the Covered Person is employed by the Sponsor prior to July 1, 2002 - first of the month following 90 days of employment

2. If the Covered Person begins employment for the Sponsor on or after July 1, 2002 – first of the month following 6 months of employment

### Applicable to All Other Employees:

1. If the Covered Person is employed by the Sponsor on or before May 3, 2002 - none

2. If the Covered Person begins employment for the Sponsor after May 3, 2002 – first of the month following 6 months of employment

**Employee Contributions Required:**   Class 1:   No
Class 2:   Yes

**Name of Associated Companies:**   PharMerica
175 Kelsey Lane
Tampa FL 33619

## LONG TERM DISABILITY COVERAGE

### Elimination Period:

The greater of:

a. the end of the Covered Person's Short Term Disability Benefits; or

b. 180 days.

Form ADOP-SCH-1                                                           Schedule of Benefits

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Amount of Insurance:**

Class 1:   50% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $6,000 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Class 2:   66.67% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $10,000 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

| **Maximum Basic Monthly Earnings on which the Benefit is Based:** | Class 1: | $12,000 |
|---|---|---|
| | Class 2: | $14,999 |

**Own Occupation Duration:**

36 Month Own Occupation

**Minimum Monthly Benefit:**

The Minimum Monthly Benefit is $100 or 10% of the Covered Person's Gross Monthly Benefit, whichever is greater.

**Maximum Benefit Period:**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | To age 65 (but not less than 5 years) |
| 60 | 60 Months |
| 61 | 48 Months |
| 62 | 42 Months |
| 63 | 36 Months |
| 64 | 30 Months |
| 65 | 24 Months |
| 66 | 21 Months |
| 67 | 18 Months |
| 68 | 15 Months |
| 69 and over | 12 Months |

## SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1. on a full-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled work days);
2. holidays (except when the holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

**"Administrative Office"** means Liberty Life Assurance Company of Boston, 100 Liberty Way, Dover, New Hampshire 03820.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Liberty during which an Employee may enroll for coverage under this policy.

**"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

**"Application"** is the document designated in Section 9, it is attached to and is made a part of this policy.

**"Appropriate Available Treatment"** means care or services which are:

1. generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;
2. accessible within the Covered Person's geographical region;
3. provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;
4. in accordance with generally accepted medical standards of practice.

# SECTION 2 - DEFINITIONS

(Continued)

**Applicable to Sales Associates:**

**"Basic Monthly Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. However, such earnings will not include bonuses, overtime pay and extra compensation other than commissions. Commissions will be averaged over the lesser of (a) the 12 month period prior to the date Disability begins; or (b) the period of employment.

**Applicable to All Other Associates:**

**"Basic Monthly Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. However, such earnings will not include bonuses, commissions, overtime pay and extra compensation.

**"Covered Person"** means an Employee insured under this policy.

**"Disability"** or **"Disabled"** means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

   a. if the Covered Person is eligible for the 36 Month Own Occupation benefit, **"Disability"** or **"Disabled"** means that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

   b. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:

   **"Disability"** or **"Disabled"** means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation.

**"Disability Benefits under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan due to Disability as defined in that plan; and

2. does not reduce the amount of money which would have been paid as Retirement Benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means the Covered Person's spouse, if living, otherwise the Covered Person's children under age 25.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

## SECTION 2 - DEFINITIONS
(Continued)

"**Elimination Period**" means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any 30 or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

"**Employee**" means a person in Active Employment with the Sponsor.

"**Enrollment Form**" is the document completed by the Covered Person, if required, when enrolling for coverage. This form must be satisfactory to Liberty.

"**Evidence of Insurability**" means a statement of proof of an Employee's medical history upon which acceptance for insurance will be determined by Liberty.

"**Extended Treatment Plan**" means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

"**Family and Medical Leave**" means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Person's child, spouse or parent or for the Covered Person's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

"**Gross Monthly Benefit**" means the Covered Person's Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

"**Hospital**" or "**Institution**" means a facility licensed to provide Treatment for the condition causing the Covered Person's Disability.

"**Initial Enrollment Period**" means one of the following periods during which an Employee may first enroll for coverage under this policy:

1.  for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Liberty.

2.  for an Employee who becomes eligible for insurance after the policy effective date, the period which ends 31 days after his Eligibility Date.

"**Injury**" means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1.  any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2.  any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

"**Last Monthly Benefit**" means the gross Monthly Benefit payable to the Covered Person prior to his death without any reduction for earnings received from employment.

Form ADOP-DEF-4/5/6                                                                 Definitions

## SECTION 2 - DEFINITIONS
(Continued)

"Material and Substantial Duties" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

"Mental Illness" means a psychiatric or psychological condition, without demonstrable organic origin, classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM). If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.

"Monthly Benefit" means the monthly amount payable by Liberty to the Disabled or Partially Disabled Covered Person.

"Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

"Partial Disability" or "Partially Disabled" means the Covered Person, as a result of Injury or Sickness, is able to:

1. perform one or more, but not all, of the Material and Substantial Duties of his Own Occupation or Any Occupation on an Active Employment or a part-time basis; or

2. perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and

3. earn between 20% and 80% of his Basic Monthly Earnings.

"Physician" means a person who:

1. is licensed to practice medicine and is practicing within the terms of his license; or

2. is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the Treatment is received and is practicing within the terms of his license.

It does not include a Covered Person, any family member or domestic partner.

"Proof" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

Proof must be submitted in a form or format satisfactory to Liberty.

Definitions

## SECTION 2 - DEFINITIONS
(Continued)

"**Regular Attendance**" means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.

"**Retirement Benefit under a Retirement Plan**" means money which:

1.  is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;

2.  does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and

3.  is payable upon:

    a.  early or normal retirement; or
    b.  Disability, if the payment does reduce the amount of money which would have been paid under the plan at the normal retirement age.

"**Retirement Plan**" means a plan which provides Retirement Benefits to Employees and which is not funded wholly by Employee contributions.  The term shall not include a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, 401(K) or a non-qualified plan of deferred compensation.

"**Schedule of Benefits**" means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

"**Sickness**" means illness, disease, pregnancy or complications of pregnancy.

"**Sponsor**" means the entity to whom this policy is issued.

"**Sponsor's Retirement Plan**" is deemed to include any Retirement Plan:

1.  which is part of any Federal, State, Municipal or Association retirement system; or

2.  for which the Employee is eligible as a result of employment with the Sponsor.

"**Substance Abuse**" means alcohol and/or drug abuse, addiction or dependency.

"**Treatment**" means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1.  this policy's effective date; or

2.  the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

**Initial Enrollment Period**

During the Initial Enrollment Period an Employee can enroll in any one coverage or coverage option shown in the Schedule of Benefits.  If he does not choose any coverage or coverage option, he will automatically be enrolled in the Core Plan.  If an Employee's Initial Enrollment Period takes place during or after the Annual Enrollment Period, but before the policy anniversary his coverage option will apply for (a) the rest of the policy year in which he first becomes eligible; and (b) the next policy year.

**Annual Enrollment Period**

During each Annual Enrollment Period, a Covered Person may keep his coverage at the same level or make one of the following changes in coverage for the next policy year:

1.  a decrease in coverage;
2.  an increase in coverage by one level without Evidence of Insurability subject to the Pre-Existing Condition Exclusion defined herein.

If a Covered Person fails to enroll for a change in his coverage option during any Annual Enrollment Period he will continue to be insured for the same coverage option during the next policy year and no change in that coverage can be made during the next policy year.

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

1.  For Coverage Applied for During Initial Enrollment Periods:

    a.  an Employee will be insured for non-contributory coverage on his Eligibility Date.

    b.  an Employee will be insured for contributory coverage on the date the Employee makes application for insurance if he enrolls on or before the 31st day after his Eligibility Date; or

    c.  an Employee who does not enroll for contributory coverage on or before the 31st day after his Eligibility Date, or terminated his insurance while continuing to be eligible may not enroll for contributory coverage until the next Annual Enrollment Period.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

(Continued)

**Effective Date of Insurance** (Continued)

2. For Contributory Coverage Applied for During Annual Enrollment Periods

An Employee will be insured for the selected contributory coverage on the first day of the next policy anniversary.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Family and Medical Leave**

An Employee's coverage may be continued under this policy for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1. the authorized leave is in writing;

2. the required premium is paid;

3. the Covered Person's benefit level, or the amount of earnings upon which the Covered Person's benefit may be based, will be that in effect on the date before said leave begins; and

4. continuation of coverage will cease immediately if any one of the following events should occur:

    a. the Covered Person returns to work;
    b. this group insurance policy terminates;
    c. the Covered Person is no longer in an eligible class;
    d. nonpayment of premium when due by the Sponsor or the Covered Person;
    e. the Covered Person's employment terminates.

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 12 months of his termination date:

1. all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date; and

2. if an Employee is re-hired by the Sponsor he will be insured for the same coverage that was in effect for him on the date his employment terminated and no change in that coverage may be made during the rest of that policy year. He may make changes in his coverage options at the next Annual Enrollment Period.

If a former Employee is re-hired by the Sponsor more than 12 months after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

(Continued)

### Leave of Absence

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is given a leave of absence.

The Covered Person's coverage will not continue beyond the end of the policy month following the policy month in which the leave of absence begins. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

### Lay-off

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is temporarily laid off.

The Covered Person's coverage will not continue beyond the end of the policy month in which the lay-off begins. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

### Associated Companies

Companies, corporations, firms or individuals that are subsidiary to, or affiliated with, the Sponsor will be called Associated Companies. The Associated Companies, if any, are listed in the Schedule of Benefits. Employees of Associated Companies will be considered Employees of the Sponsor for purposes of this policy.

As they relate to this policy, all actions, agreements and notices between Liberty and the Sponsor will be binding on the Associated Companies.

If an Associated Company ceases to be an Associated Company for any reason, its Employees will be deemed to have transferred to a class of Employees not eligible for coverage under this policy.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Transfer Provision**

In order to prevent loss of coverage for an individual because of transfer of insurance carriers, this policy will provide coverage for certain individuals as follows:

**Failure to be In Active Employment Due to Injury or Sickness:**

Subject to premium payments, this policy will cover individuals who:

1.   at the time of transfer are covered under the prior carrier's policy; and

2.   are not in Active Employment due to Injury or Sickness on the effective date of this policy.

Benefits will be determined based on the lesser of:

1.   the amount of the Disability benefit that would have been payable under the prior policy and subject to any applicable policy limitations; or

2.   the amount of Disability benefits payable under this policy. If benefits are payable under the prior policy for the Disability, no benefits are payable under this policy.

**Disability Due to a Pre-Existing Condition**

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1.   Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;

2.   if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy and the prior carrier's policy, the benefit will be determined according to this policy. However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

(Continued)

**Transfer Provision - Merger or Acquisition (Applicable to US Bioservices and Documedics)**

In order to prevent loss of coverage for an individual because of a transfer of coverage due to a merger or acquisition, this policy will provide coverage for certain individuals as follows:

**Failure to be In Active Employment Due to Injury or Sickness:**

Subject to premium payments, this policy will cover individuals who:

1. at the time of transfer are covered under the prior group policy; and

2. are not in Active Employment due to Injury or Sickness on the effective date of this policy.

Benefits will be determined based on the lesser of:

1. the amount of the Disability benefit that would have been payable under the prior policy and subject any applicable policy limitations; and

2. the amount of Disability benefits payable under this policy. If benefits are payable under the prior policy for the Disability, no benefits are payable under this policy.

**Disability Due to a Pre-Existing Condition**

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1. Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;

2. if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy; and the prior carrier's policy, the benefit will be determined according to this policy. However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

## SECTION 4 - DISABILITY INCOME BENEFITS

### LONG TERM DISABILITY COVERAGE

#### Disability Benefit

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1. Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

The Monthly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; or

2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

#### Amount of Disability Monthly Benefit

To figure the amount of Monthly Benefit:

1. Take the lesser of:

    a. the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or
    b. the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

2. Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, the Minimum Monthly Benefit will not be paid if the total of the Minimum Monthly Benefit and the benefits the Covered Person receives under Workers' Compensation and/or wage loss replacement benefits under the Pennsylvania Motor Vehicle Responsibility Law equals or exceeds 100% of the Covered Person's Pre-Disability Earnings. Also, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS

(Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

### Partial Disability

When Liberty receives Proof that a Covered Person is Partially Disabled and has experienced a loss of earnings due to Injury or Sickness and requires the Regular Attendance of a Physician, he may be eligible to receive a Monthly Benefit, subject to any other provisions of this policy. To be eligible to receive Partial Disability benefits, the Covered Person may be employed in his Own Occupation or another occupation, must satisfy the Elimination Period and must be earning between 20% and 80% of his Basic Monthly Earnings.

A Monthly Benefit will be paid for the period of Partial Disability if the Covered Person gives to Liberty Proof of continued:

1.  Partial Disability;
2.  Regular Attendance of a Physician; and
3.  Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Partially Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Partial Disability, the Injury must occur and Partial Disability must begin while the Employee is insured for this coverage.

### Loss of Earnings Monthly Calculation with Work Incentive Benefit

For the first 12 months, the work incentive benefit will be an amount equal to the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits, without any reductions from earnings. The work incentive benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of the Covered Person's Basic Monthly Earnings. If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus the Covered Person's earnings does not exceed 100% of his Basic Monthly Earnings.

Thereafter, the Monthly Benefit will be calculated as follows:

1.  The Covered Person's Basic Monthly Earnings minus the Covered Person's earnings received while he is Partially Disabled. This figure represents the amount of lost earnings
2.  Multiply the amount of lost earnings by 75%; and then
3.  deduct Other Income Benefits (shown in the Other Income Benefits and Other Income Earnings provision of this policy) from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, the Minimum Monthly Benefit will not be paid if the total of the Minimum Monthly Benefit and the benefits the Covered Person receives under Workers' Compensation and/or wage loss replacement benefits under the Pennsylvania Motor Vehicle Responsibility Law equals or exceeds 100% of the Covered Person's Pre-Disability Earnings. Also, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

# SECTION 4 - DISABILITY INCOME BENEFITS

(Continued)

## LONG TERM DISABILITY COVERAGE (Continued)

### Mental Illness and Substance Abuse Limitation

The benefit for Disability due to Mental Illness and Substance Abuse will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.

If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.

If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

# SECTION 4 - DISABILITY INCOME BENEFITS

(Continued)

## LONG TERM DISABILITY COVERAGE (Continued)

### Three Month Survivor Benefit

Liberty will pay a lump sum benefit to the Eligible Survivor when Proof is received that a Covered Person died:

1.  after Disability had continued for 180 or more consecutive days; and

2.  while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to three times the Covered Person's Last Monthly Benefit.

If the survivor benefit is payable to the Covered Person's children, payment will be made in equal shares to the children, including step children and legally adopted children. However, if any of said children are minors or are physically or mentally incapable of giving a valid release for payment, payment will be made on their behalf to the children's guardian, or as the courts may otherwise direct. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

If an overpayment is due to Liberty at the time of a Covered Person's death, the benefit payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits** means:

1.  The amount for which the Covered Person is eligible under:

    a.  Workers' or Workmen's Compensation Laws;
    b.  Occupational Disease Law;
    c.  Title 46, United States Code Section 688 (The Jones Act);
    d.  any work loss provision in mandatory "No-Fault" auto insurance;
    e.  Railroad Retirement Act;
    f.  Pennsylvania's Motor Vehicle Financial Responsibility Law;
    g.  any governmental compulsory benefit act or law; or
    h.  any other act or law of like intent.

2.  The amount of any Disability benefits which the Covered Person is eligible to receive under:

    a.  any other group insurance plan of the Sponsor;
    b.  any governmental retirement system as a result of his employment with the Sponsor; or
    c.  any individual insurance plan where the premium is wholly or partially paid by the Sponsor. However, Liberty will only reduce the Monthly Benefit if the Covered Person's Monthly Benefit under this policy, plus any benefits that the Covered Person is eligible to receive under such individual insurance plan exceed 100% of the Covered Person's Basic Monthly Earnings. If this sum exceeds 100% of Basic Monthly Earnings, the Covered Person's Monthly Benefit under this policy will be reduced by such excess amount.

3.  The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows:

    a.  the amount of any Disability Benefits under a Retirement Plan, or Retirement Benefits under a Retirement Plan the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and
    b.  the amount the Covered Person receives as retirement payments when he reaches the later of age 62, or normal retirement age as defined in the Sponsor's plan.

4.  The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, which:

    a.  the Covered Person receives or is eligible to receive; and
    b.  his spouse, child or children receives or are eligible to receive because of his Disability; or
    c.  his spouse, child or children receives or are eligible to receive because of his eligibility for Retirement Benefits.

5.  Any amount the Covered Person receives from any unemployment benefits.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings** (Continued)

**Other Income Earnings** means:

1.  any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

2.  the amount of earnings the Covered Person earns or receives while Partially Disabled; and

3.  any severance.

Other Income Benefits, except Retirement Benefits, must be payable as a result of the same Disability for which Liberty pays a benefit. The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy.

# SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

## LONG TERM DISABILITY COVERAGE (Continued)

### Estimation of Benefits

Liberty will reduce the Covered Person's Disability or Partial Disability benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person and his dependents.

The Covered Person's Disability benefit will not be reduced by the estimated amount of Other Income Benefits if the Covered Person:

1. provides satisfactory proof of application for Other Income Benefits;

2. signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Liberty for any overpayment resulting from the award or receipt of Other Income Benefits;

3. if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Liberty determines that further appeals are not likely to succeed; and

4. if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Liberty determines that further appeals are not likely to succeed.

Liberty will not estimate or reduce for any benefits under the Sponsor's pension or retirement benefit plan according to applicable law, until the Covered Person actually receives them.

In the event that Liberty overestimates the amount payable to the Covered Person from any plans referred to in the Other Income Benefits and Other Income Earnings provision of this policy, Liberty will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

### Social Security Assistance

Liberty may help a Covered Person in applying for Social Security Disability Income Benefits. In order to be eligible for assistance the Covered Person must be receiving a Monthly Benefit from Liberty. Such assistance will be provided only if Liberty determines that assistance would be beneficial.

# SECTION 4 - DISABILITY INCOME BENEFITS

(Continued)

## LONG TERM DISABILITY COVERAGE (Continued)

### Lump Sum Payments

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and are meant to compensate the Covered Person for any one or more of the following:

1. loss of past or future wages;
2. impaired earnings capacity;
3. lessened ability to compete in the open labor market;
4. any degree of permanent impairment; and
5. any degree of loss of bodily function or capacity;

will be prorated on a monthly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, the lesser of:

   a. the remainder of the Maximum Benefit Period; or
   b. 5 years.

### Cost of Living Freeze

After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits and Other Income Earnings provision of this policy. This provision does not apply to increases received from any form of employment.

### Prorated Benefits

For any period for which a Long Term Disability benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th for each day for such period of Disability.

### Discontinuation of the Long Term Disability Benefit

The Monthly Benefit will cease on the earliest of:

1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;

2. the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due;

3. the date the Covered Person refuses to be examined or evaluated at reasonable intervals;

4. the date the Covered Person refuses to receive Appropriate Available Treatment;

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Discontinuation of the Long Term Disability Benefit** (Continued)

The Monthly Benefit will cease on the earliest of: (Continued)

5. the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;

6. the date the Covered Person is able to work in his Own Occupation on a part-time basis, but chooses not to;

7. the date the Covered Person's current Partial Disability earnings exceed 80% of his Basic Monthly Earnings;

   Because the Covered Person's current earnings may fluctuate, Liberty will average earnings over three consecutive months rather than immediately terminating his benefit once 80% of Basic Monthly Earnings has been exceeded.

8. the date the Covered Person is no longer Disabled according to this policy;

9. the end of the Maximum Benefit Period; or

10. the date the Covered Person dies.

Form ADOP-LTD-26 (Cont.)                                                          Long Term Disability

## SECTION 4 - DISABILITY INCOME BENEFITS

(Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

#### Successive Periods of Disability

With respect to this policy, "**Successive Periods of Disability**" means a Disability which is due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person:

1. returns to his Own Occupation on an Active Employment basis for less than six continuous months; and

2. performs all the Material and Substantial Duties of his Own Occupation.

To qualify for a Successive Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Monthly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own Occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group long term disability coverage, this Successive Period of Disability provision will cease to apply to that Covered Person.

Form ADOP-LTD-27.1

Long Term Disability
Successive Disability

## SECTION 5 - EXCLUSIONS

**GENERAL EXCLUSIONS**

This policy will not cover any Disability due to:

1. war, declared or undeclared, or any act of war;

2. intentionally self-inflicted injuries, while sane or insane;

3. active Participation in a Riot;

4. the committing of or attempting to commit a felony or misdemeanor;

5. cosmetic surgery unless such surgery is in connection with an Injury or Sickness sustained while the individual is a Covered Person; or

6. a gender change, including, but not limited to, any operation, drug therapy or any other procedure related to a gender change.

No benefit will be payable during any period of incarceration.

With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, **Riot** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together acting with a common intent and damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

# SECTION 5 - EXCLUSIONS
(Continued)

## LONG TERM DISABILITY COVERAGE

### Pre-Existing Condition Exclusion

This policy will not cover any Disability or Partial Disability:

1. which is caused or contributed to by, or results from a Pre-Existing Condition; and

2. which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.

## SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1.  the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2.  the date the Covered Person is no longer in an eligible class;

3.  the date the Covered Person's class is no longer included for insurance;

4.  the last day for which any required Employee contribution has been made;

5.  the date employment terminates. Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

    a.  the Elimination Period; and
    b.  any period during which premium is being waived.

6.  the date the Covered Person ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

# SECTION 6 - TERMINATION PROVISIONS
(Continued)

**Policy Termination**

1. Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2. If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3. Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

   a. the number of Employees insured is fewer than 10; or

   b. less than 100% of all the Employees eligible for any non-contributory insurance are insured for it; or

   c. less than 75% of all the Employees eligible for any contributory insurance are insured for it; or

   d. the Sponsor fails:

      i.   to furnish promptly any information which Liberty may reasonably require; or
      ii.  to perform any other obligations pertaining to this policy (according to the terms and conditions contained in this policy).

4. Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Liberty will provide written notice of such termination to the Sponsor at least 31 days before it is effective.

5. Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

**Termination of Coverage Option(s)**

**Participation Requirements**

Liberty may terminate coverage or any coverage option afforded hereunder on any premium due date by giving written notice to the Sponsor at least 31 days in advance:

1. if the overall participation for all coverage options falls below 100% of the Employees eligible for benefits under this policy; and

2. if less than 25% of the Employees eligible for each coverage option are insured for it.

Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

## SECTION 7 - GENERAL PROVISIONS

### Assignment

No assignment of any present or future right or benefit under this policy will be allowed.

### Complete Contract - Policy Changes

1.  This policy is the entire contract. It consists of:

    a.  all of the pages; and
    b.  the attached signed Application of the Sponsor; and
    c.  if contributory each Employee's signed application for insurance.

2.  This policy may be changed in whole or in part. Only an officer of Liberty can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3.  No other person, including an agent, may change this policy or waive any part of it.

### Conformity with State Statutes

Any provision of this policy which, on its effective date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

### Employee's Certificate

Liberty will provide a Certificate to the Sponsor for delivery to Covered Persons. It will state:

1.  the name of the insurance company and the policy number;
2.  a description of the insurance provided;
3.  the method used to determine the amount of benefits;
4.  to whom benefits are payable;
5.  limitations or reductions that may apply;
6.  the circumstances under which insurance terminates; and
7.  the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

### Examination

Liberty, at its own expense, may have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Liberty. This right may be used as often as reasonably required.

### Furnishing of Information - Access to Records

1.  The Sponsor will furnish at regular intervals to Liberty:

    a.  information relative to Employees:

        i.   who qualify to become insured;
        ii.  whose amounts of insurance change; and/or
        iii. whose insurance terminates.

**Form ADOP-GNP-1/2.1**                                              **General Provisions**

## SECTION 7 - GENERAL PROVISIONS

(Continued)

**Furnishing of Information - Access to Records** (Continued)

1. The Sponsor will furnish at regular intervals to Liberty: (Continued)

   b. any other information about this policy that may be reasonably required.

   The Sponsor's records which, in the opinion of Liberty, have a bearing on the insurance will be opened for inspection at any reasonable time.

2. Clerical error or omission will not:

   a. deprive an Employee of insurance;
   b. affect an Employee's Amount of Insurance; or
   c. effect or continue an Employee's insurance which otherwise would not be in force.

### Interpretation of the Policy

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

### Incontestability

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue. The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

### Legal Proceedings

A claimant or the claimant's authorized representative cannot start any legal action:

1. until 60 days after Proof of claim has been given; or

2. more than three years after the time Proof of claim is required.

### Misstatement of Age

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon an Employee's age, the amount of the benefit will be the amount an Employee would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Liberty is advised of the error.

**Form ADOP-GNP-2.1/3.6**                                                                                          **General Provisions**

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Notice and Proof of Claim**

1. **Notice**

   a. Notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based. If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Liberty.

   b. When written notice of claim is applicable and has been received by Liberty, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Liberty written Proof of claim without waiting for the forms.

2. **Proof**

   a. Satisfactory Proof of loss must be given to Liberty no later than 90 days after the end of the Elimination Period.

   b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

   c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Liberty within 30 days of the request for such Proof.

Liberty reserves the right to determine if the Covered Person's Proof of loss is satisfactory.

**Payment of Claims**

The benefit is payable to the Covered Person. But, if a benefit is payable to a Covered Person's estate, a Covered Person who is a minor, or who is not competent, Liberty has the right to pay up to $250 to any of the Covered Person's relatives or any other person whom Liberty considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Covered Person. If Liberty in good faith pays the benefit in such a manner, any such payment shall fulfill Liberty's responsibility for the amount paid.

**Right of Recovery**

Liberty has the right to recover any overpayment of benefits caused by, but not limited to, the following:

1. fraud;
2. any error made by Liberty in processing a claim; or
3. the Covered Person's receipt of any Other Income Benefits.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Right of Recovery** (Continued)

Liberty may recover an overpayment by, but not limited to, the following:

1.  requesting a lump sum payment of the overpaid amount;
2.  reducing any benefits payable under this policy;
3.  taking any appropriate collection activity available including any legal action needed; and
4.  placing a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any Other Income Benefits, whether on a periodic or lump sum basis.

It is required that full reimbursement be made to Liberty within 60 days of such overpayment.

### Statements

In the absence of fraud, all statements made in any application are considered representations and not warranties (absolute guarantees). No representation by:

1.  the Sponsor in applying for this policy will make it void unless the representation is contained in the signed Application; or

2.  any Employee in enrolling for insurance under this policy will be used to reduce or deny a claim unless a copy of the Enrollment Form, signed by the Employee if required, is or has been given to the Employee.

### Subrogation and Reimbursement

When a Covered Person's Injury or Sickness appears to be someone else's fault, benefits otherwise payable under this policy for loss of time as a result of that Injury or Sickness will not be paid unless the Covered Person or his legal representative agree(s):

1.  to repay Liberty for such benefits to the extent they are for losses for which compensation is paid to the Covered Person by or on behalf of the person at fault;

2.  to allow Liberty a lien on such compensation and to hold such compensation in trust for Liberty; and

3.  to execute and give to Liberty any instruments needed to secure the rights under 1. and 2. above.

Further, when Liberty has paid benefits to or on behalf of the injured Covered Person, Liberty will be subrogated to all rights of recovery that the Covered Person has against the person at fault. These subrogation rights will extend only to recovery of the amount Liberty has paid. The Covered Person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to Liberty. This provision is not enforceable where prohibited by statute or regulation.

### Workers' Compensation

This policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

## SECTION 8 - PREMIUMS

**Premium Rates**

Liberty has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

A change in the initial premium rate(s) will not take effect within the first 24 months, except that Liberty may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1.  a change occurs in the policy design;

2.  a division, subsidiary or Associated Company is added to or deleted from this policy;

3.  when the number of Covered Persons changes by 15% or more from the number insured on this policy's effective date; or

4.  a change in existing law which affects this policy.

No premium may be changed unless Liberty notifies the Sponsor at least 31 days in advance. Premium changes may take effect on an earlier date when both Liberty and the Sponsor agree.

**Payment of Premiums**

1.  All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Liberty's Administrative Office, or to Liberty's agent. The due dates are specified on the first page of this policy.

2.  All payments made to or by Liberty shall be in United States dollars.

3.  If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

4.  The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of a Covered Person's Insurance" provision of this policy.

5.  If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

6.  Except for fraud and premium adjustments, refunds of premiums or charges will be made only for:

    1.  the current policy year; and

    2.  the immediately preceding policy year.

# SECTION 8 - PREMIUMS

(Continued)

## Grace Period

This is the 31 days following a premium due date, other than the first, during which premium payment may be made. During the grace period this policy shall continue in force, unless the Sponsor has given Liberty written notice 31 days in advance of discontinuance of this policy.

## Waiver of Premium

Premium payments for a Covered Person are waived during any period for which benefits are payable. If coverage is to be continued, premium payments must be resumed following a period during which they were waived.

## AMENDMENT NO. _____8_____

It is agreed the following changes are hereby made to this policy: GF3-830-004041-01

**ADDITIONS**                    **DELETIONS**

Form ADOP-ELG-10

The effective date of this change is <u>October 1, 2003.</u>

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this <u>30th</u> day of December, 2003.

Issued to and Accepted by:

<u>AmerisourceBergen Corporation</u>
**Sponsor**

By_____
**Signature and Title of Officer**

**Liberty Life Assurance Company of Boston**

**Form ADOP-AMENDMENT**                    **Delete/Add Policy Pages**

%JS 44   (Rev. 11/04)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)   PLAINTIFFS | DEFENDANTS |
|---|---|
| Harold Liff | Liberty Mutual Insurance Company aka Liberty Life Assurance Company of Boston; and The Ameriscurce Bergen Long Term Disability Plan, Ameriscurce Bergen Corporation aka Ameriscurce Bergen Drug Corporation |

(b)  County of Residence of First Listed Plaintiff   Middlesex, MA

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)

Mark Bonsten,
788 Walnut St, Suite 120
Newton MA 02460   (617-244-5551)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                         and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury |  | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☒ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other |  |  | Under Equal Access |
|  | Employment | ☐ 550 Civil Rights |  |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of |
|  | Other |  |  |  | State Statutes |
|  | ☐ 440 Other Civil Rights |  |  |  |  |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Violation of Employee Retirement Income and Security Act of 1974, 29 USC Sec. 1001, et seq.

Brief description of cause:
Unlawful denial of long term disability benefits

## VII. REQUESTED IN   COMPLAINT:

☐  CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) _Harold Liff v. Liberty Motual Insurance Co_

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

|  | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
| :--: | :-- | :-- |
| ☒ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases |
|  | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
|  | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
|  | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                      YES ☐        NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

                                                                      YES ☐        NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                      YES ☐        NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                      YES ☐        NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                      YES ☐        NO ☒

   A.    If yes, in which division do all of the non-governmental parties reside?

         Eastern Division ☐          Central Division ☐          Western Division ☐

   B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division ☐          Central Division ☐          Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                      YES ☐        NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _Mark Bronstein_

ADDRESS _288 Walnut St, Suite 120    Newton MA 02460_

TELEPHONE NO. _(01 7 - 244 - 5551_

(CategoryForm.wpd - 5/2/05)