UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HAROLD LIFF | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| V. | ) | CIVIL ACTION |
| | ) | NO. 05-11672-WGY |
| LIBERTY MUTUAL INSURANCE COMPANY | ) | |
| A/K/A LIBERTY LIFE ASSURANCE CO. OF | ) | |
| BOSTON, THE AMERISOURCEBERGEN | ) | |
| LONG TERM DISABILITY PLAN AND | ) | |
| AMERISOURCEBERGEN CORPORATION | ) | |
| A/K/A AMERISOURCEBERGEN DRUG | ) | |
| CORPORATION | ) | |

DEFENDANTS

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR
LIMITED PRE-TRIAL DISCOVERY RELATING TO
THE SCOPE OF THE ADMINISTRATIVE RECORD**

**INTRODUCTION**

NOW COMES the plaintiff , Harold Liff ("Plaintiff" or "Mr. Liff") and submits this

memorandum in support of his Motion For Limited Pre-Trial Discovery in his pending action

under 29 U.S.C. § 1132 *et seq.* ("ERISA")  seeking review of the decision of the Defendants,

AmerisourceBergen Benefit Plan ("the Plan"), and the Plan's disability carrier, Liberty Life

Assurance Company of Boston ( "Liberty Life") denying Plaintiff's claim for long term

disability benefits ("LTD benefits"), as well as the conduct of Plaintiff's employer and Plan

sponsor, AmerisourceBergen Corporation ("AmerisourceBergen" or "the Employer") in this

process.

1

Defendant Liberty Life has filed a Partial Record for Judicial Review on 1/30/06 consisting of insurer's claims file from its consideration of Plaintiff's benefit claim.  The purpose of this motion is to discover the scope of additional documents and other evidence that may not have been part of the Liberty claims file, but which are necessary and material to the Court's review of the decision of the Defendants to deny Plaintiff's claim for benefits.

Mr. Liff seeks to discover:

a.    The legal and factual basis for the Defendants' determination as to Plaintiff's "effective date" of insurance coverage under the Liberty Life policy which resulted in the denial of his claim for benefits.

b.    The relevant documents and information which existed and could have been considering by Defendants in deciding Plaintiff's claim.

c.    The Defendant's respective efforts in the investigative and decision making process which led to the denial of the claim.

d.    Documents and communications related to the respective responsibilities of each of the Defendants under the Plan for the determination of the employee's "effective date" of insurance coverage as part of the claim determination process.

e.    Information regarding representations made by Defendants to Mr. Liff and other former Telepharmacy employees regarding their coverage for LTD benefits under the Plan.

f.    Underwriting guidelines, manuals and other materials governing the Plan's "Affiliated Companies" provision and its application to the Telepharmacy Acquisition by AmerisourceBergen.

2

**I.      SUMMARY OF THE RELEVANT FACTS**

Pending before this Court is the Plaintiff's claim that the Plan Administrator and its disability carrier, Liberty Life, improperly denied the Plaintiff's claim for LTD benefits under ERISA, 29 U.S.C.§ 1132(a)(1)(B) by erroneously determining the effective date of his coverage under the Plan resulting in the denial of his claim under the pre-existing illness provision clause of the Plan.

The Plaintiff also claims that the Employer violated its fiduciary duty to the Plaintiff under ERISA, 29 U.S.C. § 1132(a)(3)(B) by providing incomplete and inaccurate information to Mr. Liff, the Plan and Liberty regarding Mr. Liff's employment benefits coverage status, and also may have committed other acts and omissions regarding plan administration which led to the improper and avoidable denial of Plaintiff's disability claim by Liberty on technical grounds.

Unlike the "typical" ERISA disability benefit appeal this case does not concern the question of the nature and extent of the employee's medical disability[1].  As the Court is aware, in such cases where the insurer's denial of disability is at issue, Defendants will often argue that the court's review should be limited to the medical evidence before the insurer at the time of its decision.

In this case, the dispute is not about the reasonableness of the insurer's disability decision, but, rather the accuracy and reasonableness of the Plan's determination of the employee's effective date of insurance under the Plan which was then provided to Liberty Life and became the basis of its denial of  Plaintiff's claim for benefits.

---

[1]In the course of reviewing the claim, Liberty's own medical reviewer concluded that "the medical file supports impairment on a continuous basis from 6/9/03 going forward." See AR00229.

The question of the employee's effective date of insurance is complicated here because the Plaintiff had been an employee of Telepharmacy Solutions, Inc. ("Telepharmacy") which was acquired by Defendant AmerisourceBergen[2] on January 1, 2002.

In Paragraph 9.8 of the Stock Purchase Agreement governing the acquisition, AmerisourceBergen agreed that for the first six months following the closing date of the sale, former Telepharmacy employees would continue to receive benefits equivalent to what they had previously received before the acquisition, but that beginning July 1, 2002, they would be entitled to:

> substantially similar benefits for which other similarly situated employees of [AmerisourceBergen] are eligible to receive. Each [former Telepharmacy employee] will receive service credit in connection with employee benefits based upon such employee's previous and continued employment with [Telepharmacy]."[3]

Based on information he received from AmerisourceBergen management, the Plaintiff was led to believe that once the July 1, 2002 date passed, he would be covered for any subsequent disability benefit claim as if he had been an AmerisourceBergen employee since 1995 when he first became a Telepharmacy employee.

In 2003 Plaintiff's chronic diabetes and kidney problems began to increasingly interfere with his ability to perform his duties as Vice President of Software Development at AmerisourceBergen and he and his direct managers advised him that they felt he would soon

---

[2]At the time AmerisourceBergen was known as the Amerisource Corporation.  The Defendants do not contest that AmerisourceBergen is the same entity.

[3]In the agreement AmerisourceBergen and Telepharmacy are referred to as the Buyer and the Company, respectively.  Attached is a redacted copy of the Purchase and Sale Agreement produced by counsel to the Plan and Employer (**EXHIBIT A**).

reach the point where he would be unable to adequately perform his material job duties.  It was

then agreed that he would assist in transferring his duties over a period of time and then would

be placed on disability leave and receive benefits under the company's short term and then long

term disability with Liberty Life in accordance with the Plan.[4]

Mr. Liff did stop work as agreed in June 2003 and collected STD benefits as provided by

the Plan.  Then in October 2003  Mr. Liff applied for LTD benefits from Liberty Life in

accordance with the Plan provisions and the arrangement he had reached with the Employer.[5]

However, Liberty Life, in a letter dated October 28, 2003, denied his claim on the grounds that

the "effective date" of his insurance coverage was July 1, 2002 and that his claim was therefore

foreclosed by the insurance policy's "pre-existing illness" exclusion.[6]

Although a "LTD Claim Worksheet" in the Liberty claim file indicates that the claims

department had initially determined that Mr. Liff's date of hire was October 16, 1995 and his

"effective date" for insurance purposes was April 16, 1996 (AR00074), Liberty subsequently

denied Plaintiff's claim based on information received in a memorandum dated October 17, 2003

written to Liberty by Paul Pescatore, an AmerisourceBergen manager and the former Executive

Vice President of Telepharmacy Solutions, Inc.

In the memorandum Mr. Pescatore stated in part:

---

[4]According to Liberty's claim notes: "Employer asked him to go on medical leave because he could not [sic] longer do his job due to his medical problems." See AR00043.

[5]The Plan provides for payment of LTD benefits if the employee remains disabled at the end of a 180 day waiting period during which payment is made under the company's short term disability plan.(AR00003).

[6]The Liberty Life policy provides that a disability due to a "pre-existing condition" which occur within 12 month of an employee's "effective date of coverage" is not covered. (AR000026).

> Dr. Harold J. Liff has been an employee of Telepharmacy Solutions, Inc. Since 1995. During that period he participated in the medical/dental insurance benefits provided by the company. These benefits did not include Long Term Disability. At the end of 2001, Telepharmacy Solutions was acquired by AmerisourceBergen and all employees of the company became Amerisource Bergen employees with an employee start date back to the original date of hire at Telepharmacy Solutions. On July 2, 2002 all Telepharmacy employees became eligible to partake of AmerisourceBergen benefits which included basic Long Term Disability insurance.

(AR00265.)

Utilizing the July 2, 2002 date provided by Mr. Pescatore, Liberty denied Mr. Liff's claim based on the its insurance policy's pre-existing illness exclusion.[7]

Plaintiff, through counsel, then contacted both Liberty and AmerisourceBergen requesting an explanation as to the basis for Mr. Pescatore's memorandum, as it contradicted what Mr. Liff had been told by management both at the time of the acquisition by AmerisourceBergen and as part of the decision making process which led to his disability leave. Mr. Liff specifically requested that Liberty and Amerisource Bergen review the actual terms of the acquisition agreement which was thought to support his claim.

Liff's formal appeal of the denial was upheld in a letter dated June 24, 2004 because "Amerisource states that Telepharmacy employees were added to the LTD plan on July 1, 2002" and because there was no evidence that "premiums were possibly paid to Liberty for Mr. Liff prior to July 1 2002. Regardless of the agreement for Mr. Liff's date of hire, he cannot be covered without a premium submitted on his behalf." (AR000085). The Liberty Life claim notes also indicate that the claims department looked into whether AmerisourceBergen had added

---

[7]If Amerisource management had set Mr. Liff's final day at work a month later, his claim would have been covered under the plan even his effective date of coverage was July 1, 2002.

Telepharmacy as an "associated company" pursuant to a policy provision by which Liberty treated employees of certain Amerisource subsidiaries as if they were AmerisourceBergen employees for benefit coverage purposes. (AR 000013). The claims file indicates that it was determined that AmerisourceBergen had never requested that Telepharmacy be added as an "associated company." (AR 000234-000236). The claims notes make clear that the Liberty Life personnel who reviewed Mr. Liff's appeal essentially concluded that even if the employer's acquisition of Telepharmacy may have included a provision promising Mr. Liff insurance coverage as if he had always been an AmerisourceBergen employee, they had no obligation to honor this agreement since AmerisourceBergen had neither added Telepharmacy as an "associated company" following the acquisition, nor had made other arrangements to pay premiums for coverage for Mr. Liff prior to July 1, 2002.

## II.        NATURE OF THE PLAINTIFF'S DISCOVERY REQUEST

The Plaintiff is seeking discovery information regarding the consideration by Defendants of Mr. Liff's insured status as it affected the denial of his claim for benefits. This includes pertinent information regarding Mr. Liff's effective date of insurance under the terms of his employment, whether AmerisourceBergen took the proper steps to implement that agreement with regard to its policy with Liberty Life to provide the Plan's benefits, and the process by which Liberty and AmerisourceBergen investigated and determined Mr. Liff's claim.

Specifically, the Plaintiff is seeking:

**A.        As to Defendant Liberty**:

(1)      All internal rules, guidelines, protocols, memoranda, correspondence, or other

documents that reference or interpret the "effective date of coverage" and "Associated Companies" provisions in the Plan and manner in which the provision should be interpreted and/or applied;

(2)     All internal rules, guidelines, protocols, memoranda, or other documents that guide Liberty employees' in determining a claimant's "effective date of coverage"

(3)     Information from the Liberty Life underwriting department regarding the application of the underwriting guidelines.

**B.     As to Defendant, AmerisourceBergen Benefit Plan and AmerisourceBergen as Employer:**

1)     All Agreements and other Plan Documents between Defendants relating to administration of the Plan.

(2)     All communications regarding Mr. Liff.

(3)     All communications between AmerisourceBergen and Liberty regarding the application of the "Associated Companies" provision of the Plan.

(4)     Information regarding the acquisition agreement between Telepharmacy and AmerisourceBergen as it relates to employment and benefit status of acquired Telepharmacy employees.

(5)     Communications prior to Mr. Liff's departure from AmerisourceBergen with Mr. Liff and any others regarding his planned disability leave and regarding his right to LTD benefits.

(6)     Communications with former Telepharmacy management regarding the Stock Purchase Agreement provisions relevant to employee benefits and the

implementation thereof after the acquisition.


III.  __THE RELEVANT LAW__

Denial of benefit cases are generally reviewed by district courts under a *de novo* standard

of review, unless the terms of the Plan contain explicit language granting the insurer discretion to

interpret the terms of the plan and the facts of the case.[8]  *See e.g.*, *Brigham* v. *Sun Life*, 317 F.3d

72 (1st Cir. 2003).  The record for review by the reviewing court is generally limited to the

administrative record before the insurer when it made the decision to deny benefits.  *Cook* v.

*Liberty Life Assurance Company of America*, 320 F.3d 11, 18 (1st Cir. 2003) ("In making this

determination, we look to the record as a whole;  "the 'whole' record consists of that evidence

that was before the administrator when he made the decision being reviewed.")  The question of

what constitutes the administrative record, however, has never been unequivocally resolved by

the First Circuit, and is at issue in the current motion.

Specifically, on December 15, 2005, Liberty served upon the Plaintiff and Defendant

AmerisourceBergen, its claimed administrative record in this case (hereinafter referred to as

"Claim File.").  Pursuant to the Scheduling Order in this matter, the Plaintiff notified the

Defendants on January 3, 2006, of its belief that the Claim File disclosed by the Defendant

Liberty was incomplete, and did not constitute the complete administrative record for the Court's

review.  After conferring, the Parties were unfortunately unable to come to an agreement as to

---

[8]The parties have not determined to date the appropriate standard of review in this matter. Although the Plaintiff alleges that the proper standard of review should be *de novo*, he has argued this Motion as though the proper standard of review was discretionary.  The Plaintiff's argument in this regard does not waive his right to claim at future date that the applicable standard of review is *de novo*.

the scope of the record.  As a result, the Defendant Liberty filed, with the Court on January 30,

2006, a Partial Record for Judicial Review, which the Plaintiff refers to as the "Claim File"

throughout this Motion.

Pursuant to the parties' Joint Statement, the Plaintiff was required to file a motion with

the Court regarding a motion for discovery.


A.    **The Plaintiff's Requested Discovery Is Essential to Ensure That a Complete and Accurate Record Is in Front of the Court Prior to its Review of the Benefit Denial**

1.    **The Requested Discovery Relates to "Evidence That May Explain a Key Item."**

The First Circuit in *Orndorf v. Paul Revere Life Insurance Co.,* 404 F. 3d 510 ( 1st Cir

2005, cert den. 126 S Ct 425 , US 2005) makes clear that it is appropriate to supplement the

administrative record with additional evidence regarding key facts underlying a factual

determination by the Plan. The court stated that "[e]vidence may be relevant to explain a key

item, such as the duties of the claimant's position, if that was omitted from the administrative

record." *Orndorf*  at 520.

In this case, Mr. Liff is merely seeking to discover the material facts necessary to allow

for a full review of the Plan's investigation into and conclusion on a"key item" which led to the

Plan's denial of his claim.  Being sought is the contractual basis for Plaintiff's effective date of

insurance as an acquired Telepharmacy employee, the basis for the opinion offered by Mr.

Pescatore in his memorandum to Liberty Life, the contradictory information given to him before

his leave by AmerisourceBergen management, as well as the policies, procedures and

communications among the various Defendants, which as a group had a fiduciary duty to administer the Plan accurately and fairly.

Without this information it would be impossible for the court to determine whether the Defendants' investigation into and conclusion as to Mr. Liff's effective date of insurance coverage and its resulting denial of benefits was fair and reasonable. *See e.g.*, *Toland v. McCarthy*, 499 F.Supp. 1183 (D. Mass. 1980).

The Court in *Toland* rejected the defendants' argument that the only relevant evidence was that which was actually before the defendants when they made their decision. "Defendants as Trustees of the Pension Plan, had a duty to take an initiative themselves to cause reasonably available evidence-that is, evidence substantially bearing upon plaintiff's claim and available through reasonable efforts-to be developed and considered in the decision making process." *Id.* at 1190.

Unlike a case involving a medical disability determination by a commercial insurance carrier, Mr. Liff is not attempting to discover and to introduce untimely evidence about his medical condition that he did not put before the Defendants at the time the Defendants evaluated his claim. As discussed above, there is no dispute regarding Mr. Liff's actual disability status. The evidence at issue here is information regarding his employment status as it affected his entitlement to benefits, as well as materials which Defendants themselves developed, utilized, trained its employees in, and instructed its employees to consult as part of the administration of the Plan.

Mr. Liff is seeking the pertinent information from the Defendants regarding the "key item" of his effective date of insurance coverage and employment status which underlies the

denial of the Plaintiff's claim. It is expected that Defendants will argue that since no additional

information regarding the date of coverage issue is in the claims file, it should not be

discoverable now.  However, just because Liberty chose to take information received from Mr.

Pescatore at face value, and did not investigate the issue raised by Plaintiff in its administrative

appeal, does not mean that this information is not critical in determining whether the Plan's

decision to deny benefits was reasonable.[9]

      Liberty has represented to the Plaintiff that it merely relied upon the information

provided to it by the Plan and the Employer.  In addition, the Claims File includes statements by

Liberty personnel that even if the Employer had committed to Telepharmacy employees to cover

them for benefits purposes as if they had always been AmerisourceBergen employees, Liberty

would ignore this agreement since AmerisourceBergen had not taken the proper steps to make

Liberty responsible for claims resulting from this commitment.

      Limiting the record to the Claim File would be particularly unfair in a case such as this

where the issue is not a purely medical one and where the Plan's responsibilities may be divided

between the Plan Administrator and a commercial insurer which may have been delegated the

---

[9]It is important to note that ERISA, and the regulations implemented pursuant to ERISA, directly address the question of whether the requested information is relevant with respect to an insurer's denial of benefits.  Specifically, 29 CFR 2560.503-1(h)(2)(iii) requires as part of a full and fair review of a benefit denial, disclosure of all documents "relevant" to a beneficiaries claim for benefits; a document is "relevant" as defined in section (m)(8)(ii) if, *inter alia,*  it "[w]as submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination.  In addition, 29 CFR § 2560.503-1(m)(8)(iv) states that documents relevant to a claimants' appeal include: "In the case of a group health plan or plan providing disability benefits, *constitutes a statement of policy or guidance* with respect to the plan concerning the denied treatment option or *benefit* for the claimant's diagnosis, *without regard to whether such advice or statement was relied upon in making the benefit determination*."

authority to make disability decisions.

The Plan and Employer have consistently represented to Plaintiff that it merely provided employment status information to Defendant Liberty. Plaintiff is merely seeking to discover what information was given and what were the correct facts underlying that information. Because this information was directly relied upon in denying Mr. Liff's claim, any guidelines followed by Liberty Life, administrative agreements between all Defendants and the facts underlying Mr. Liff's employment status are correctly part of the administrative record in this case.

Without the ability to discover evidence which might be in the control of the employer (as the Plan) would insulate the employer and the insurer for liability whenever a denial could be based on employment status rather than on medical issues alone.

As stated previously, the First Circuit has indicated that discovery may be necessary to add to the record "evidence may be relevant to explain a key item, such as the duties of the claimant's position, if that was omitted from the administrative record." *Orndorf,* 404 F.3d 510, 520 (1st Cir. 2005). Similarly, in *Cerito* v. *Liberty Life Assurance Co. of Boston*, 209 F.R.D. 663, 664 (M.D.Fla. 2002), the court held that discovery may be permitted beyond the administrative record when it is relevant to (1) examining whether an administrator fulfilled his or her fiduciary duties; (2) whether proper procedures were followed in compiling the record; (3) whether the record is complete; and (4) whether the administrator had a conflict of interest. *See also, Jett* v. *Blue Cross and Blue Shield of Ala. Inc*., 890 F.2d 1137 (11th Cir. 1989) (discovery may be conducted as to all "the facts as known to the administrator at the time the decision was made."); *Buckley* v. *Metropolitan Life Ins. Co.,* 115 F.3d 936, 941 (11th Cir. 1997).

**B.**   **The Plaintiff Is Entitled to the Requested Discovery as (i) the Federal Rules of Civil Procedure Permit Expansive Discovery; (ii) ERISA Does Not Preclude Discovery; and (iii) the Court Has Independent Authority to Permit Discovery.**

**1.**   **The Federal Rules Of Civil Procedure Permit Discovery Regarding Matters Relevant To The Pending Action.**

The Plaintiff's request for the limited discovery should be allowed, as it is relevant to the pending action. As a preliminary matter, the Federal Rules of Civil Procedure favor discovery under these circumstances. *See generally*, Fed.R.Civ.P. 26; Advisory Committee Notes to Fed.R.Civ.P. 26(b) (West 1999). The scope of discovery encompasses "any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . [and which] appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). This rule is to be considered broadly, to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). The discovery requested above is relevant to the current action, and is essential to: (1) establish the parameters of the administrative record; (2) aid in the determination of the appropriate standard of review; and (3) permit meaningful judicial review of the current action.

**2.**   **ERISA Does Not Preclude Discovery.**

ERISA is devoid of language prohibiting discovery in benefit denial cases. *See generally*, 29 U.S.C. § 1001, *et. seq*. To the contrary, ERISA's language and its implementing regulations reflect the intent of both Congress and the United States Department of Labor to require fiduciaries to disclose to beneficiaries, during the appeal process, the basis of its decisions and any documents it *may or may not have* relied upon in making that decision. *See*

14

*e.g.* 29 U.S.C. § 1132©) (requiring the plan administrator to disclose the plan document and

pertinent documents relied upon by the administrator in evaluating the claim within 30 days of

receiving a written request and applying a $110 per day penalty on a fiduciary for failing to do

so);  29 C.F.R. § 2560.503-1(g)(1)(v)(A) (requiring plan administrator to provide written

notification if "an internal rule, guideline, protocol, or other similar criterion was relied upon in

making the adverse determination" and requiring the disclosure of such information upon

request); 29 CFR 2560.503-1(h)(2)(iii) (requiring as part of a full and fair review of a benefit

denial, disclosure of all documents "relevant" to a beneficiaries claim for benefits; a document is

"relevant" as defined in section (m)(8)(ii) if, *inter alia,* it "[w]as submitted, considered or

generated in the course of making the benefit determination, without regard to whether such

document, record, or other information was relied upon in making the benefit determination).

Thus, a record is incomplete if it does not contain the claims manual, training manual, and

guidelines that are used to instruct the insurance company's claim handlers. In addition, a record

is incomplete if it does not contain administrative agreements.  In Mr. Liff's case, the record

must also contain the underlying facts necessary to the determination of his relevant employment

status with the Employer before the record could be considered complete.


3.      **The Court Has Clear Authority To Permit Discovery As To The Information
        Available To The Defendant At The Time It Made The Decision To Deny
        Mr. Liff's Benefits.**

_____By this Motion, the Plaintiff is attempting to ascertain all the relevant information

available to Liberty in making its determination to deny Mr. Liff's benefits.  The information

available to Liberty that the Plaintiff is seeking to discover includes relevant information that

was or should have been shared by the defendants in their joint obligations to the Plaintiff under

ERISA.

In Glista v. Unum Life Insurance Company of America F. 3d 113, 123 (1st Cir, 2004), the

First Circuit emphasized the appropriateness of transparency in the claim process and for the

disclosure of claims manuals and the like, based on the Department of Labor Regulation.  In

Glista, the Court stated in part:

> Moreover, under new federal regulations, claimants are entitled to obtain copies of
> precisely such documents.  ERISA requires that "[i]n accordance with regulations of the
> Secretary [of Labor]," every employee benefit plan must provide participants whose benefits
> claims were denied with a "full and fair review" of the denial.  29 U.S.C. § 1133(2003).  In 2000,
> the Department of Labor promulgated regulations interpreting "full and fair review" to require
> that claimants be given access to all "relevant" documents.  29 C.F.R. § 2560.503-1(h)(2)(iii).
> Where the plan in question provides disability benefits, the Department of Labor defines
> "relevant" documents to include "statement(s) of policy or guidance with respect to the plan
> concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to
> whether such advice or statement was relied upon in making the benefit determination." §
> 2560.503-1(m)(8)(iv).  The Department indicated that these new regulations were intended to
> make clear that "the claimant should receive any information demonstrating that, in making the
> adverse benefit determination, the plan complied with its own processes for ensuring appropriate
> decision making and consistency." 65 Fed. Reg. 70,246, 70,252 ( Nov. 21, 2000).

The Defendants may argue that unbridled discovery may interfere with the goal of

ERISA in streamlining judicial review of a benefit denial.  In particular, the Defendants may

argue that discovery contravenes the goals of achieving prompt and inexpensive resolution of

disputes under ERISA.  While it is true that unbridled discovery aimed at re-litigating the

underlying benefit denial may contravene these goals, this is simply not what the Plaintiff is

requesting in this case.

First, the Plaintiff's discovery is well-defined and limited in nature.  It is geared toward

discovering material (e.g., claims guidelines, protocols, employer records, etc.) that are easily

accessible to the Defendants.  It does not require the Defendants to engage in extensive and

16

burdensome discovery regarding each and every claimant having the pre-existing illness

exclusion applied to deny benefits under the Plan, nor does it seek information regarding the

financial impact of claims based upon pre-existing illness exclusions.  In this way, the Plaintiff's

requests meet the parameters established by the First Circuit.

Second, if permitted by the Court, the Plaintiff agrees to limit depositions to three.  It

would be expected that none would require more than half a day.

Third, the Court has ample power under existing case law and under the Federal Rules of

Civil Procedure, to balance the Plaintiff's need for discovery and meaningful judicial review

against the Defendants' interests in prompt closure of the dispute in keeping with ERISA's

overall policy.  As the court stated in *Nagele  v. Electronic Data Systems Corporation*, 193

F.R.D. 94, 103 (W.D.N.Y. 2000):

> Given the potential for a growing caseload of claims seeking review of ERISA
> covered benefit denials, there may be an understandable motivation to restrict
> discovery as a means of accelerating disposition of these cases.  But judicial
> review without a complete and accurate record is in no one's interest and making
> mistakes quickly does not comport with the meaningful judicial review Congress
> undoubtedly had in mind.
> *Nagele*, 193 F.R.D. at 107.

ERISA requires that an ERISA fiduciary "shall discharge his duties . . .  solely in the

interest of the participants and beneficiaries . . ." 29 U.S.C. § 1104(a)(1)(b).  Through this

request, the Plaintiff is merely asking for the right to determine whether or not the Defendants

breached this fiduciary duty.

### CONCLUSION

For the reasons stated above, the Plaintiff respectfully requests that the Court permit him

to engage in limited pre-trial discovery and to expand the administrative record accordingly.

Dated: February 16, 2006                          Respectfully Submitted,

                                                  HAROLD LIFF,

                                                  By His Attorneys,

                                                   /s/ Mark Bronstein
                                                  _____

_____                              Mark Bronstein(BBO No. 058640)
                                                  M. Katherine Sullivan(BBO No. 649239)
                                                  Law Office of Mark Bronstein
                                                  288 Walnut Street, Suite 120
                                                  Newton, MA 02458
                                                  617-244-5551


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of

record for each other party by regular mail, postage prepaid, this 16th day of February, 2006.



                                                   /s/ Mark Bronstein
                                                  _____

_____                              Mark Bronstein(BBO No. 058640)
                                                  M. Katherine Sullivan(BBO No. 649239)
                                                  Law Office of Mark Bronstein
                                                  288 Walnut Street, Suite 120
                                                  Newton, MA 02458
                                                  617-244-5551


18

EXECUTION COPY

STOCK PURCHASE AGREEMENT

by and among

AMERISOURCE CORPORATION,

TELEPHARMACY SOLUTIONS, INC.

and

EACH OF THE STOCKHOLDERS OF

TELEPHARMACY SOLUTIONS, INC.

Dated January 8, 2002

EXHIBIT A

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT is made and entered into as of January 8, 2002, by and among AmeriSource Corporation, a Delaware corporation ("Buyer"), Telepharmacy Solutions, Inc., a Delaware corporation (the "Company"), and each of undersigned stockholders of the Company.

## RECITALS

REDACTED

TABLE OF CONTENTS

Page

ARTICLE I THE TRANSACTION ........................................................................................2
    1.1 Purchase of Current Stock, Treatment of Options and Warrants. ...................2
    1.2 Purchase of Notes. ...................................................................................2
    1.3 Purchase Price Payment. ..........................................................................2
    1.4 The Earn Out. .........................................................................................3

ARTICLE II CLOSING ....................................................................................................9
    2.1 Closing Date. ...........................................................................................9
    2.2 Closing Deliveries. ...................................................................................9
    2.3 Default by any Stockholder. ....................................................................10

ARTICLE III REPRESENTATIONS AND WARRANTIES REGARDING THE COMPANY .............10
    3.1 Capitalization. ........................................................................................10
    3.2 Organization. .........................................................................................11
    3.3 Subsidiaries. ..........................................................................................12
    3.4 Financial Statements. ..............................................................................12
    3.5 Absence of Certain Changes or Events. ....................................................12
    3.6 Title to Assets. ......................................................................................13
    3.7 Real Property. ........................................................................................14
    3.8 Leases. .................................................................................................14
    3.9 Working Capital Assets. ..........................................................................15
    3.10 Patents, Trademarks, Etc. .....................................................................15
    3.11 Contracts. ...........................................................................................17
    3.12 Litigation. ...........................................................................................17
    3.13 Compliance with Laws. .........................................................................17
    3.14 Environmental Laws. .............................................................................18
    3.15 Employee Benefit Matters. .....................................................................18
    3.16 Taxes. .................................................................................................20
    3.17 Consents. ............................................................................................22
    3.18 Authority; Effect of Agreement. ..............................................................22
    3.19 Employee Relations. .............................................................................22
    3.20 Products Liability. .................................................................................23
    3.21 Transactions with Related Parties. ..........................................................23
    3.22 Insurance. ...........................................................................................24
    3.23 Brokers. ..............................................................................................24
    3.24 Compensation Arrangements; Bank Accounts; Officers and Directors. ........24
    3.25 Disclosure. ..........................................................................................25

ARTICLE IV INDIVIDUAL REPRESENTATIONS AND WARRANTIES OF STOCKHOLDERS .....25
    4.1 Ownership of Shares. ..............................................................................25
    4.2 Consents. ..............................................................................................25
    4.3 Authority; Effect of Agreement. ................................................................25
    4.4 Brokers and Finders. ..............................................................................26

ARTICLE V REPRESENTATIONS AND WARRANTIES OF BUYER .................................................26
    5.1 Organization. .........................................................................................26
    5.2 Corporate Power and Authority; Effect of Agreement...............................26
    5.3 Consents. ............................................................................................27
    5.4 Brokers. ..............................................................................................27
    5.5 Purchase for Investment. .....................................................................27

ARTICLE VI COVENANTS OF THE STOCKHOLDERS AND THE COMPANY .............................27
    6.1 Cooperation by the Stockholders..........................................................27
    6.2 Conduct of the Business Pending Closing..............................................27
    6.3 Access.................................................................................................29
    6.4 Resignations. .......................................................................................30
    6.5 Fulfillment of Agreements. ....................................................................30
    6.6 Insurance. ...........................................................................................30
    6.7 Exclusivity............................................................................................30
    6.8 Confidentiality.......................................................................................30
    6.9 Covenant Not to Compete; Nonsolicitation; Confidentiality. ....................30
    6.10 Tax Matters........................................................................................31

ARTICLE VII COVENANTS OF THE COMPANY AND BUYER...............................................31
    7.1 Cooperation by Buyer. .........................................................................31
    7.2 Further Assurances..............................................................................31
    7.3 Indemnification of Officers and Directors. ..............................................31

ARTICLE VIII CONDITIONS TO BUYER'S OBLIGATIONS ....................................................31
    8.1 Representations and Warranties True and Correct..................................32
    8.2 Covenants and Agreements Performed. ................................................32
    8.3 Stockholders' Closing Certificate...........................................................32
    8.4 No Prohibition......................................................................................32
    8.5 Third Party Consents. ..........................................................................32
    8.6 Governmental Consents. ......................................................................32
    8.7 Proceedings. .......................................................................................32
    8.8 Opinion...............................................................................................32
    8.9 Noncompetition Agreements..................................................................32
    8.10 Escrow Agreement. ...........................................................................32
    8.11 Stockholder Representative Escrow Agreement ....................................33
    8.12 Releases of Stockholders....................................................................33
    8.13 Shareholders' Agreements. .................................................................33
    8.14 Material Adverse Effect. ......................................................................33
    8.15 Delivery of Current Stock. ...................................................................33
    8.16 Delivery of Notes. ..............................................................................33

ARTICLE IX CONDITIONS TO STOCKHOLDERS' OBLIGATIONS..........................................33
    9.1 Representations and Warranties True and Correct..................................33
    9.2 Covenants and Agreements Performed. ................................................33
    9.3 Buyer Closing Certificate......................................................................34
    9.4 No Prohibition......................................................................................34
    9.5 Governmental Consents. ......................................................................34
    9.6 Proceedings. .......................................................................................34

9.7 Payment of Aggregate Cash Consideration............................................................34
9.8 Company Employees.......................................................................................34
9.9 Release of Buyer...........................................................................................34

ARTICLE X TERMINATION PRIOR TO CLOSING ............................................34

10.1 Termination.................................................................................................34
10.2 Effect on Obligations......................................................................................35

ARTICLE XI TAX MATTERS ..............................................................................35

11.1 Preparation of Returns and Payment of Taxes. ...............................................35
11.2 Tax Indemnification.......................................................................................36
11.3 Assistance and Records..................................................................................36

ARTICLE XII SURVIVAL AND INDEMNIFICATION .........................................36

12.1 Survival......................................................................................................36
12.2 General Indemnification.................................................................................37
12.3 Right of Offset.............................................................................................41

ARTICLE XIII STOCKHOLDERS' REPRESENTATIVE .......................................41

13.1 Irrevocable Appointment of Stockholders' Representative...............................41
13.2 Other Matters Relating to Stockholders' Representative. ................................42
13.3 Stockholders' Representative Indemnification..................................................42
13.4 Appointment of Successor Stockholders' Representative..................................42

ARTICLE XIV MISCELLANEOUS .......................................................................42

14.1 Interpretive Provisions. .................................................................................42
14.2 Entire Agreement. ........................................................................................43
14.3 Successors and Assigns..................................................................................43
14.4 Headings......................................................................................................43
14.5 Modification and Waiver.................................................................................43
14.6 Binding Effect; Potential Merger. ..................................................................43
14.7 Expenses......................................................................................................44
14.8 Notices.......................................................................................................44
14.9 Governing Law; Consent to Jurisdiction.........................................................46
14.10 Public Announcements..................................................................................46
14.11 No Third Party Beneficiaries........................................................................46
14.12 Counterparts...............................................................................................46
14.13 Disclosure...................................................................................................47

ARTICLE XV CERTAIN DEFINITIONS ...............................................................47

**REDACTED**

    9.8    <u>Company Employees</u>.  Between the Closing and July 1, 2002, Buyer will provide employees of the Company with substantially similar employee benefits as they received immediately prior to the Closing and with severance benefits as are provided to other similarly situated employees of Buyer.  Thereafter, Buyer will provide such employees with substantially similar employee benefits as are provided to other similarly situated employees of the Buyer and in addition such employees will be eligible in the discretion of the Buyer to substantially similar benefits for which other similarly situated employees of the Buyer are eligible to receive.  Each employee of the Company will receive service credit in connection with employee benefits based upon such employee's previous and continued employment with the Company.  Notwithstanding anything to the contrary, (a) the annual salary of any employee of the Company will be no less than the annual salary that such employee receives as of the date hereof as set forth on <u>Schedule 9.8</u> and (b) nothing in this provision shall be construed as a guaranty of employment or any specific position or title with the Company.

**REDACTED**

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on its behalf as of the date first above written.

AMERISOURCE CORPORATION

By: _____

　　　Name:

　　　Title:

TELEPHARMACY SOLUTIONS, INC.

By: _____

　　　Name:

　　　Title: