UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAROLD LIFF,<br>    Plaintiff<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, a/k/a LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, THE AMERISOURCE BERGEN CORPORATION LONG TERM DISABILITY PLAN and AMERISOURCE BERGEN CORPORATION, a/k/a AMERISOURCE BERGEN DRUG CORPORATION,<br>    Defendants | CIVIL ACTION NO. 05-11672 WGY |

## OPPOSITION OF DEFENDANTS AMERISOURCE BERGEN CORPORATION AND THE AMERISOURCEBERGEN CORPORATION LONG TERM DISABILITY PLAN TO PLAINTIFF'S MOTION FOR LIMITED PRE-TRIAL DISCOVERY RELATING TO THE SCOPE OF THE ADMINISTRATIVE RECORD

### INTRODUCTION

This is an action to recover benefits under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). In his Complaint, plaintiff Harold Liff ("Plaintiff") seeks to recover disability benefits under a group disability policy issued by defendant Liberty Life Insurance Company of Boston ("Liberty Life") and sponsored by defendant AmerisourceBergen Corporation ("AmerisourceBergen"). A copy of the group policy is attached to the Complaint and marked Exhibit A. The policy funds disability benefits for defendant The AmerisourceBergen Corporation Long Term Disability Plan ("The Plan").

In his First Cause of Action, Plaintiff seeks to recover disability benefits from June, 2003 to the present, and continuing, pursuant to 29 U.S.C. § 1132(a)(1)(B). In his Second Cause of Action, Plaintiff is seeking equitable relief against AmerisourceBergen, under 29 U.S.C. § 1132(a)(3)(B), in the form of an order that "AmerisourceBergen fully disclose all information regarding the terms of the acquisition of Telepharmacy Solutions including but not limited to any and all agreements regarding the benefit status of Telepharmacy Solutions employees."

In the motion now before the Court, Plaintiff is seeking, among other things, the same relief that is prayed for in the Second Cause of Action of the Complaint. He is seeking "discovery regarding the facts surrounding the acquisition of Mr. Liff's former employer, Telepharmacy [Solutions], Inc. ("Telepharmacy") by AmerisourceBergen and the terms of this agreement as it pertains to the benefits status promised to former Telepharmacy employees." Motion – p. 2. Plaintiff is also seeking additional information regarding administrative agreements between Liberty and AmerisourceBergen relating to employee status and the process by which Liberty and AmerisourceBergen investigated and determined Plaintiff's claim. Plaintiff also seeks to take two depositions of former officers of Telepharmacy Solutions concerning their thoughts and opinions relating to the status of Plaintiff's disability benefits following the acquisition of Telepharmacy Solutions by AmerisourceBergen. Motion – pp. 4-5.

## STATEMENT OF FACTS RE: PLAINTIFF'S CLAIM

As alleged in the Complaint, Plaintiff began working as a software developer for ADDS, Inc. in October, 1995. In February, 2000, ADDS, Inc. changed its name to Telepharmacy Solutions, Inc. Telepharmacy Solutions was acquired by AmerisourceBergen in January, 2002. Complaint-par. 10. A redacted copy of the acquisition agreement between AmerisourceBergen

and Telepharmacy Solutions is attached as Exhibit A to Plaintiff's motion. The actual title of the acquisition agreement is the "Stock Purchase Agreement by and among AmerisourceBergen Corporation, Telepharmacy Solutions, Inc. and Each of the Stockholders of Telepharmacy Solutions, Inc." Plaintiff was one of the stockholders of Telepharmacy Solutions and thus was a party to the Stock Purchase Agreement. Attached hereto and marked EXHIBIT A is another redacted copy of the Stock Purchase Agreement, which has attached to it the signature page of the Plaintiff as one of the stockholders. This redacted copy, with Plaintiff's signature thereon, was provided to Plaintiff's counsel on December 21, 2005, pursuant to his request.

Paragraph 9.8 of the Stock Purchase Agreement, entitled "Company Employees", addresses the issue of employee benefits for Telepharmacy Solutions' employees during the time period between the closing of the stock purchase, which was on or about January 8, 2002, and July 1, 2002, when the Liberty Life group policy became effective. The first sentence provides as follows: "Between the Closing and July 1, 2002, Buyer [AmerisourceBergen] will provide employees of the Company [Telepharmacy Solutions] with substantially similar employee benefits as they received immediately prior to the Closing...." This sentence is the key language that is controlling with respect to Plaintiff's claim in this case. The clear import of this sentence, as it relates to this case, is that if Plaintiff and his fellow employees at Telepharmacy Solutions were provided long term disability benefits by Telepharmacy Solutions prior to the closing on January 8, 2002, then AmerisourceBergen would also provide these benefits up until July 1, 2002. However, if Telepharmacy Solutions did not provide these benefits, then AmerisourceBergen would not provide them. On July 1, 2002, the Liberty Life group policy became effective and, in accordance with the second sentence of paragraph 9.8, all former Telepharmacy Solutions employees who were now AmerisourceBergen employees, became

covered employees under the Liberty Life policy.

On January 30, 2006, counsel for Liberty Life filed with the Court the Partial Record for Judicial Review, which consists of the Liberty Life group policy and claim file relating to Plaintiff's claim. The documents in this filing have been Bates-stamped AR000001 – AR000460. The claim file shows that Plaintiff's claim for disability benefits was denied based on the pre-existing condition exclusion of the group policy. Attached hereto and marked EXHIBIT B is a copy of a letter from the claim file which Liberty Life sent to Plaintiff's counsel Mark Bronstein on June 24, 2004 (AR000083-AR000087). This letter sets forth in detail the basis for denying Plaintiff's claim. Simply stated, Liberty concluded that the effective date of Plaintiff's disability coverage was July 1, 2002, not some earlier date, and since Plaintiff's claim of disability for his pre-existing diabetes condition began on June 9, 2003, which was within the first 12 months after Plaintiff's effective date of July 1, 2002, no benefits were due to him pursuant to the pre-existing condition exclusion.

Attorney Bronstein had contended that the effective date of Plaintiff's benefit coverage related back to 1995, when Plaintiff first became employed by Telepharmacy Solutions, and therefore the pre-existing condition exclusion was not applicable. (Ex. B-AR000084). After conducting a thorough investigation of this contention, Liberty advised Attorney Bronstein, in its June 24, 2004 letter, that this contention could not be supported, stating: "[W]e find no evidence that Telepharmacy Solutions was covered under the Amerisource long term disability policy retroactive to January 1, 2001, or back to 1995, as you contend." (Ex. B-AR000085). In reaching their decision, Liberty stated that it relied, in part, on information provided by Paul Pescatore, an Executive Vice President at Telepharmacy Solutions. In a letter to Liberty Life dated October 17, 2003, which Liberty quoted to Attorney Bronstein, Mr. Pescatore provided the following

information:

> Dr. Harold J. Liff has been an employee of Telepharmacy Solutions, Inc. since 1995. During that period he participated in the medical/dental insurance benefits provided by the company. **These benefits did not include Long Term Disability.** (emphasis added). At the end of 2001, Telepharmacy Solutions was acquired by AmerisourceBergen and all employees of the company became AmerisourceBergen employees with an employee start date back to the original date of hire at Telepharmacy Solutions. On July 1, 2002, all Telepharmacy employees became eligible to partake of AmerisourceBergen benefits which included basic Long Term Disability insurance. Dr. Liff thus became eligible and was enrolled in that Long Term Disability insurance plan.

The clear message conveyed by Mr. Pescatore to Liberty was that Plaintiff did not have any long term disability coverage in effect prior to January 8, 2002 while he was still an employee of Telepharmacy Solutions. Consequently, in accordance with paragraph 9.8 of the Stock Purchase Agreement, he did not have any long term disability coverage with AmerisourceBergen prior to July 1, 2002. Only after the Liberty Life group policy became effective on July 1, 2002 did Plaintiff have such coverage.

The information provided by Mr. Pescatore was entirely consistent with paragraph 9.8 of the Stock Purchase Agreement. Prior to July 1, 2002, AmerisourceBergen would provide to Plaintiff and all other Telepharmacy Solutions employees benefits substantially similar to what those employees had been receiving from Telepharmacy Solutions prior to the closing of the acquisition on January 8, 2002. However, as stated by Mr. Pescatore, while Plaintiff had been receiving medical/dental benefits coverage as a Telepharmacy Solutions employee, he did not receive long term disability benefits coverage. Thus, since Plaintiff wasn't receiving disability coverage while he was an employee of Telepharmacy Solutions, he would not be receiving those benefits from AmerisourceBergen until he became covered by the Liberty Life group policy effective July 1, 2002. This was all fully explained to Attorney Bronstein in Liberty's letter of June 24, 2004. (Ex. B-AR000084-86).

## PLAINTIFF'S REQUEST FOR DISCOVERY

All of Plaintiff's requests for discovery from AmerisourceBergen should be denied. As the First Circuit has stated, "[S]ome very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." *Liston v. Unum Corp.Officer Severance Plan,* 330 F.3d 19, 23 (1st Cir. 2003). Plaintiff has failed to provide any reason for the discovery that he seeks from AmerisourceBergen, let alone a very good reason. Plaintiff's right to receive disability benefits is governed by the terms of the Liberty Life group policy. It is undisputed that Plaintiff's coverage under this group policy first became effective on July 1, 2002. *See,* Complaint – Ex. A. However, Plaintiff seeks to have an earlier effective date so that he can overcome the effect of the pre-existing condition exclusion of the policy. He seeks to do this by obtaining discovery regarding the facts surrounding the acquisition of Telepharmacy Solutions by AmerisourceBergen, and the terms of this agreement as it pertains to the benefits status promised to former Telepharmacy employees. However, the sole controlling "fact" with respect to the acquisition is the written acquisition agreement itself, i.e. the Stock Purchase Agreement, and this has already been provided to Plaintiff and his counsel. The best evidence, and the only admissible evidence, of what benefits would be provided to Telepharmacy Solutions employees by AmerisourceBergen is in paragraph 9.8 of the Stock Purchase Agreement. Delving any deeper into this issue as to the parties' negotiations, or any alleged representations that might have been made to the Plaintiff, would be entirely unproductive as any information obtained would be irrelevant and inadmissible, barred by the parol evidence rule. Plaintiff does not contend that any of the language in either document is ambiguous, which might permit the consideration of extrinsic evidence in order to better understand the intent of the parties. Instead, he is seeking to obtain documents and deposition

testimony that do not relate at all to the fundamental governing documents – the Liberty Life group policy and the Stock Purchase Agreement.

Plaintiff ignores the fact that he is a party to the Stock Purchase Agreement, a signatory to the agreement, and therefore he is bound by its terms. Presumably, as a signatory to the agreement, Plaintiff had a complete and unredacted copy of the agreement from the date on which he signed it back in December, 2001 or January, 2002, or at least had the right to receive such a copy if he had asked. This was long before the time when Plaintiff went out on disability in June, 2003. Although Plaintiff makes generalized allegations that he was provided misleading information at the time the acquisition agreement was signed, and again when he went out on disability, he does identify any specific individuals who might have given him this misleading information, nor does he seek to take their depositions. Instead, he asks to take the depositions of the former President and Vice President of Telepharmacy Solutions about the terms of the acquisition as it related to employee benefits. Plaintiff does not suggest that either of these individuals were the persons who provided any of the alleged misleading information.

Simply stated, nothing that Plaintiff hopes to obtain through discovery from AmerisourceBergen will alter the plain and unambiguous terms and conditions of the Liberty Life group policy or the Stock Purchase Agreement. Plaintiff is free to argue to the contrary, that the relevant language, properly construed, does not support the conclusion reached by AmerisourceBergen and Liberty Life. However, there is nothing more in the discovery that Plaintiff seeks that will assist the parties or the Court when considering the question whether Liberty Life, as the claims fiduciary with discretionary authority, made the correct decision in denying Plaintiff's claim for disability benefits. Plaintiff's motion should be denied.

## CONCLUSION

Based on the foregoing points and authorities, Plaintiff's motion for limited pre-trial discovery should be denied in its entirety.

By their attorneys,

/s/ Edward S. Rooney, Jr.
Edward S. Rooney, Jr.
BBO No. 426840
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
One International Place, 18th Floor
Boston, MA 02110
(617) 342-6800

**CERTIFICATE OF SERVICE**
I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 3/9/06.
By: E. S. Rooney