# EXHIBIT A

EXECUTION COPY

---

STOCK PURCHASE AGREEMENT

by and among

AMERISOURCE CORPORATION,

TELEPHARMACY SOLUTIONS, INC.

and

EACH OF THE STOCKHOLDERS OF

TELEPHARMACY SOLUTIONS, INC.

---

Dated January 8, 2002

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT is made and entered into as of January 8, 2002, by and among AmeriSource Corporation, a Delaware corporation ("Buyer"), Telepharmacy Solutions, Inc., a Delaware corporation (the "Company"), and each of undersigned stockholders of the Company.

## RECITALS

**REDACTED**

TABLE OF CONTENTS

Page

ARTICLE I THE TRANSACTION .................................................................................2

    1.1 Purchase of Current Stock, Treatment of Options and Warrants. ...................2
    1.2 Purchase of Notes. ........................................................................................2
    1.3 Purchase Price Payment. ..............................................................................2
    1.4 The Earn Out. ...............................................................................................3

ARTICLE II CLOSING ..............................................................................................9

    2.1 Closing Date. ................................................................................................9
    2.2 Closing Deliveries. .......................................................................................9
    2.3 Default by any Stockholder. ........................................................................10

ARTICLE III REPRESENTATIONS AND WARRANTIES REGARDING THE COMPANY .............10

    3.1 Capitalization. ..............................................................................................10
    3.2 Organization. ...............................................................................................11
    3.3 Subsidiaries. ................................................................................................12
    3.4 Financial Statements. ...................................................................................12
    3.5 Absence of Certain Changes or Events. .......................................................12
    3.6 Title to Assets. ..............................................................................................13
    3.7 Real Property. ...............................................................................................14
    3.8 Leases. .........................................................................................................14
    3.9 Working Capital Assets. ...............................................................................15
    3.10 Patents, Trademarks, Etc. ..........................................................................15
    3.11 Contracts. ...................................................................................................17
    3.12 Litigation. ...................................................................................................17
    3.13 Compliance with Laws. ..............................................................................17
    3.14 Environmental Laws. ..................................................................................18
    3.15 Employee Benefit Matters. ..........................................................................18
    3.16 Taxes. .........................................................................................................20
    3.17 Consents. ....................................................................................................22
    3.18 Authority; Effect of Agreement. ..................................................................22
    3.19 Employee Relations. ...................................................................................22
    3.20 Products Liability. .......................................................................................23
    3.21 Transactions with Related Parties. ..............................................................23
    3.22 Insurance. ...................................................................................................24
    3.23 Brokers. ......................................................................................................24
    3.24 Compensation Arrangements; Bank Accounts; Officers and Directors. ....................24
    3.25 Disclosure. ..................................................................................................25

ARTICLE IV INDIVIDUAL REPRESENTATIONS AND WARRANTIES OF STOCKHOLDERS .....25

    4.1 Ownership of Shares. ...................................................................................25
    4.2 Consents. .....................................................................................................25
    4.3 Authority; Effect of Agreement. ...................................................................25
    4.4 Brokers and Finders. ....................................................................................26

ARTICLE V REPRESENTATIONS AND WARRANTIES OF BUYER .................................26

    5.1 Organization. ...............................................................................................26
    5.2 Corporate Power and Authority; Effect of Agreement ............................26
    5.3 Consents. .................................................................................................27
    5.4 Brokers. ....................................................................................................27
    5.5 Purchase for Investment. ........................................................................27

ARTICLE VI COVENANTS OF THE STOCKHOLDERS AND THE COMPANY ...............27

    6.1 Cooperation by the Stockholders ............................................................27
    6.2 Conduct of the Business Pending Closing ..............................................27
    6.3 Access .......................................................................................................29
    6.4 Resignations. ...........................................................................................30
    6.5 Fulfillment of Agreements. ......................................................................30
    6.6 Insurance. ................................................................................................30
    6.7 Exclusivity ...............................................................................................30
    6.8 Confidentiality .........................................................................................30
    6.9 Covenant Not to Compete; Nonsolicitation; Confidentiality. ...................30
    6.10 Tax Matters ...........................................................................................31

ARTICLE VII COVENANTS OF THE COMPANY AND BUYER ....................................31

    7.1 Cooperation by Buyer. ............................................................................31
    7.2 Further Assurances. ................................................................................31
    7.3 Indemnification of Officers and Directors. .............................................31

ARTICLE VIII CONDITIONS TO BUYER'S OBLIGATIONS .........................................31

    8.1 Representations and Warranties True and Correct. ...............................32
    8.2 Covenants and Agreements Performed. ..................................................32
    8.3 Stockholders' Closing Certificate ...........................................................32
    8.4 No Prohibition. ........................................................................................32
    8.5 Third Party Consents. .............................................................................32
    8.6 Governmental Consents. .........................................................................32
    8.7 Proceedings. .............................................................................................32
    8.8 Opinion ....................................................................................................32
    8.9 Noncompetition Agreements. ...................................................................32
    8.10 Escrow Agreement. ...............................................................................32
    8.11 Stockholder Representative Escrow Agreement. ...................................33
    8.12 Releases of Stockholders. ......................................................................33
    8.13 Shareholders' Agreements. ...................................................................33
    8.14 Material Adverse Effect. ........................................................................33
    8.15 Delivery of Current Stock. .....................................................................33
    8.16 Delivery of Notes. ..................................................................................33

ARTICLE IX CONDITIONS TO STOCKHOLDERS' OBLIGATIONS ...............................33

    9.1 Representations and Warranties True and Correct ................................33
    9.2 Covenants and Agreements Performed. ..................................................33
    9.3 Buyer Closing Certificate. .......................................................................34
    9.4 No Prohibition. ........................................................................................34
    9.5 Governmental Consents. .........................................................................34
    9.6 Proceedings. .............................................................................................34

9.7 Payment of Aggregate Cash Consideration.................................................34
9.8 Company Employees...................................................................................34
9.9 Release of Buyer. ......................................................................................34

ARTICLE X TERMINATION PRIOR TO CLOSING ...........................................34

10.1 Termination. ............................................................................................34
10.2 Effect on Obligations...............................................................................35

ARTICLE XI TAX MATTERS ..............................................................................35

11.1 Preparation of Returns and Payment of Taxes. .......................................35
11.2 Tax Indemnification. ................................................................................36
11.3 Assistance and Records. ..........................................................................36

ARTICLE XII SURVIVAL AND INDEMNIFICATION ........................................36

12.1 Survival. ..................................................................................................36
12.2 General Indemnification............................................................................37
12.3 Right of Offset..........................................................................................41

ARTICLE XIII STOCKHOLDERS' REPRESENTATIVE .....................................41

13.1 Irrevocable Appointment of Stockholders' Representative.........................41
13.2 Other Matters Relating to Stockholders' Representative. .........................42
13.3 Stockholders' Representative Indemnification............................................42
13.4 Appointment of Successor Stockholders' Representative...........................42

ARTICLE XIV MISCELLANEOUS .......................................................................42

14.1 Interpretive Provisions. ...........................................................................42
14.2 Entire Agreement. ....................................................................................43
14.3 Successors and Assigns. ...........................................................................43
14.4 Headings...................................................................................................43
14.5 Modification and Waiver...........................................................................43
14.6 Binding Effect; Potential Merger. ...........................................................43
14.7 Expenses...................................................................................................44
14.8 Notices......................................................................................................44
14.9 Governing Law; Consent to Jurisdiction. .................................................46
14.10 Public Announcements.............................................................................46
14.11 No Third Party Beneficiaries...................................................................46
14.12 Counterparts. ..........................................................................................46
14.13 Disclosure...............................................................................................47

ARTICLE XV CERTAIN DEFINITIONS ...............................................................47

**REDACTED**

9.8    Company Employees.  Between the Closing and July 1, 2002, Buyer will provide employees of the Company with substantially similar employee benefits as they received immediately prior to the Closing and with severance benefits as are provided to other similarly situated employees of Buyer.  Thereafter, Buyer will provide such employees with substantially similar employee benefits as are provided to other similarly situated employees of the Buyer and in addition such employees will be eligible in the discretion of the Buyer to substantially similar benefits for which other similarly situated employees of the Buyer are eligible to receive.  Each employee of the Company will receive service credit in connection with employee benefits based upon such employee's previous and continued employment with the Company.  Notwithstanding anything to the contrary, (a) the annual salary of any employee of the Company will be no less than the annual salary that such employee receives as of the date hereof as set forth on Schedule 9.8 and (b) nothing in this provision shall be construed as a guaranty of employment or any specific position or title with the Company.

**REDACTED**

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on its behalf as of the date first above written.

AMERISOURCE CORPORATION

By: _____

      Name:
      Title:

TELEPHARMACY SOLUTIONS, INC.

By: _____

      Name:
      Title:

STOCKHOLDERS:

**REDACTED**

*Harold Liff*
Harold Liff

**REDACTED**

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

# EXHIBIT  B


Liberty
Mutual®

Liberty Life Assurance Company
of Boston

Group Disability Claims
P.O. Box 1525
Dover, NH 03821-1525
1-800-210-0268

June 24, 2004

Law Office of Mark Bronstein
Attn: Attorney Mark Bronstein
288 Walnut Street, Suite 120
Newton, MA 02460

RE:     Long Term Disability Benefits
        Policyholder: AmerisourceBergen Corp.
        Claim #: 780881
        Claimant: Harold Liff

Dear Attorney Bronstein:

We have completed our review of your request for reconsideration of Mr. Liff's claim for Long Term Disability benefits and are unable to alter our original determination to deny benefits because there is no information supporting that Telepharmacy Solutions Inc. was added to the AmerisourceBergen policy prior to July 1, 2002, and therefore Liberty has no information supporting that Mr. Liff was covered by the long term disability policy prior to July 1, 2002. In addition, in consideration of Mr. Liff's July 1, 2002, LTD Effective Date, Mr. Liff's condition is considered Pre-Existing under the policy.

As stated in our letter of October 28, 2003, AmerisourceBergen Corporation's Long Term Disability plan includes exclusions concerning pre-existing conditions:

*Pre-Existing Condition Exclusion*
*This policy will not cover any Disability or Partial Disability:*

    *1. which is caused or contributed to by, or results from a Pre-Existing Condition; and*
    *2. which begins in the first 12 months after the Covered Person's effective date of coverage*

*"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.*

*"Treatment" means consulting, receiving care of services provided by or under the direction of a Physician including diagnostic measures; being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.*

**AR000083**

Member of Liberty Mutual Group

Harold Liff
June 24, 2004
Page # 2

The policy also states:

*Eligibility Waiting Period:*

*Applicable to All Other Employees:*
    *1. If the Covered Person is employed by the Sponsor on or before May 3, 2002 – none*
    *2. If the Covered Person is employed by the Sponsor after May 3, 2002 – first of the month following 6*
      *months of employment*

And

*Eligibility Date for Insurance Benefits*

*An Employee in an eligible class will qualify for insurance on the later of:*
    *1. this policy's effective date; or*
    *2. the day after the Employee completes his Eligibility Waiting Period shown in the Schedule of Benefits*

In order to perform a full and fair review of Mr. Liff's appeal, the claim file was reviewed.

Mr. Liff's last day of work occurred on June 6, 2003, and his condition began on June 9, 2003. Mr. Liff's long term disability coverage was effective on July 1, 2002 per the claim file.

On October 17, 2003, Mr. Paul Pescatore, Executive Vice President for Telepharmacy Solutions, Inc., stated:

> Dr. Harold J. Liff has been an employee of Telepharmacy Solutions, Inc. since 1995. During that periods he participated in the medical/dental insurance benefits provided by the company. These benefits did not include Long Term Disability. At the end of 2001, Telepharmacy Soluations was acquired by AmerisourceBergen and all employees of the company became AmerisourceBergen employees with an employee start date back to the original date of hire at Telepharmacy Solutions. On July 1, 2002, all Telepharmacy employees became eligible to partake of AmerisourceBergen benefits which included basic Long Term Disability insurance. Dr. Liff thus became eligible and was enrolled in that Long Term Disability insurance plan. He did not take the buy-up coverage at that time nor during the year 2003.

The claim file does indicate Mr. Liff's date of hire was October 16, 1995.

You stated upon appeal, "Mr. Liff along with certain other Telepharmacy employees became employees of AmerisourceBergen on January 1, 2001 with their benefits and other employee rights to be calculated as if they had been with AmerisourceBergen since the date they were hired by Telepharmacy. In Mr. Liff's case, this gave him coverage under the AmerisourceBergen benefit plan as if he had been an employee since 1995."

AR000084

Upon review of this matter, we find no evidence that Telepharmacy Solutions was covered under the Amerisource long term disability policy retroactive to January 1, 2001, or back to 1995, as you contend. The policy in effect prior to July 1, 2002, does not list Telepharmacy Solutions as an associated company. You were previously sent a copy of this policy on May 3, 2004 by Ms. Monica Dube. You have not provided any information supporting that Mr. Liff was covered under the policy prior to July 1, 2002.

Via discussion with our underwriting department on June 10, 2004, we did find information that supports a 2002 effective date for Mr. Liff. Specifically, a review of an April 2001 census data supplied by Amerisource, does not include Mr. Liff. However, a September 2002 census data supplied by Amerisource, does indeed include Mr. Liff.

The underwriting department noted that their file does not include documentation specifically adding Telepharmacy Solutions as an associated company. You will note that Telepharmacy Solutions is also not listed as an associated company in the policy that was effective July 1, 2002. Therefore, it appears Telepharmacy was absorbed into the Amerisource group. Liberty must rely upon the information provided in the census data from Amerisource, as well as the information provided by Mr. Paul Pescatore, as stated above.

Although it may be true that Mr. Liff was given credit by Amerisource for his Telepharmacy service (1995-December 31, 2000), his original date of hire has no impact on when the LTD pre-existing condition begins, given that his LTD coverage became effective on July 1, 2002. His date of hire would only impact the eligibility waiting period, and make his coverage effective on the date he was first eligible, July 1, 2002. Per the Eligibility Waiting Period provision indicated above, Mr. Liff's effective date of coverage is July 1, 2002, given that he was employed prior to May 3, 2002.

Secondly, if Telepharmacy Solutions was not acquired by Amerisource until the end of 2001, there is no coverage for these employees under the AmerisourceBergen long term disability policy prior to that date, as they were not eligible under the policy. Telepharmacy Solutions states that long term disability was offered beginning on July 1, 2002, and there is no information in our files indicating otherwise.

Third, there is no coverage if premiums are not paid for the Telepharmacy Solutions group prior to their July 1, 2002 effective date. Given the census data provided by Amerisource listing Mr. Liff in September 2002, we have no evidence that premiums were possibly paid to Liberty for Mr. Liff prior to July 1, 2002. Regardless of the agreement for Mr. Liff's date of hire, he cannot be covered without premium submitted on his behalf.

Amerisource clearly states that Telepharmacy employees were added to the LTD plan on July 1, 2002.

Although it was indicated that our office would provide you documentation regarding the Telepharmacy effective date prior to our appeal decision, since there is no other documentation in our files other than that which you are already aware, the appeal decision

Harold Liff
June 24, 2004
Page # 4

is now being rendered. Because the census data contains confidential employee information, that information cannot be shared with you at this time.

In regards to the pre-existing condition evaluation of Mr. Liff's claim, since his disability claim occurred on June 9, 2003, he is within the first twelve months of coverage. Therefore, we conducted a pre-existing condition investigation relative to his effective date of coverage and medical treatment.

In review of the appeal, Mr. Liff's file was sent for review by a board-certified Internal Medicine consulting physician, in order to understand if his conditions were indeed "caused, contributed to, by or resulting from" a condition for which he received treatment during the three month period just prior to his July 1, 2002 LTD effective date (4/1/2002-6/30/2002).

On June 17, 2004, the consulting physician stated:

> The medical file supports impairment on a continuous basis from 6/9/2003 going forward. The diagnoses supporting impairment include: renal failure, hyperkalemia, azotemia, hypertension, and uncontrolled diabetes mellitus.

The physician also stated:

> The claimant received care and treatment for progressive renal failure, hypertension, and diabetes on multiple occasions between 4/1/2002 and 6/30/2002 (see below: specifically 4/9/2002, 4/22/2002, 4/24/2002, 5/24/2002, 6/13/2002, 6/24/2002). As noted both in the claimant's physician's notes and in the APS, the claimant's renal failure is caused by uncontrolled hypertension and type II diabetes. He has had both hypertension and diabetes for many years, and received continuous treatment for both diagnoses throughout the pre-ex period. In fact, the claimant's renal failure was already manifest during the pre-ex period, and he was seeking consultation from a nephrologist for this reason.

The physician advised that Mr. Liff was treated for the indicated conditions on the following dates during the period April 1, 2002 – June 30, 2002:

-April 22, 2002 by Dr. Hannah Gilligan (nephrologist), for evaluation of renal function
-April 24, 2002 by Dr. Eugene Clerkin (endocrinologist), consultation for diabetes
-May 9, 2002 by Dr. Richard Zangara (internal medicine), for diabetes and hypertension
-May 24, 2002 by Dr. Richard Zangara, for diabetes and hypertension
-June 13, 2002 by Dr. Eugene Clerkin, for evaluation of diabetes mellitus
-June 24, 2002 by Dr. Richard Zangara, follow up of hypertension and diabetes

Based upon our review and the medical evidence on file, Mr. Liff's disabling conditions were caused or contributed to, or resulting from, the conditions for which he received treatment during the three months just prior to his July 1, 2002 effective date. Therefore, Mr. Liff's conditions are considered pre-existing conditions as defined by the policy, and no benefits are payable. His claim will remain closed.

AR000086

Harold Liff
June 24, 2004
Page # 5

This claim determination reflects an evaluation of the claim facts and policy provisions.

Under the Employee Retirement Income Security Act (ERISA) Appeal guidelines, Mr. Liff was entitled to appeal the determination made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information wished to be considered as part of the appeal. Liberty has conducted a full and fair review of his appeal and accompanying materials, and has determined that the denial of benefits will be maintained.

At this time, Mr. Liff's administrative right to review has been exhausted and no further review will be conducted by Liberty and his claim will remain closed. He may request to receive, free of charge, copies of all documents relevant to his claim. He has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in AmerisourceBergen Corporation's policy. These provisions are not contingent on decisions made by neither the Social Security Administration nor the Workers' Compensation Carrier.

Sincerely,

Heather Carignan, CEBS, HIA
Appeal Review Consultant
(800) 210-0268 Ext. 38577
Fax (603) 743-4794

AR000087