UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAROLD LIFF,<br>Plaintiff<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE<br>COMPANY, aka LIBERTY LIFE<br>ASSURANCE COMPANY OF BOSTON, THE<br>AMERISOURCE BERGEN COPRORATION<br>LONG TERM DISABILITY PLAN, and<br>AMERISOURCEBERGEN CORPORATION,<br>aka AMERISOURCEBERGEN DRUG<br>CORPORATION<br>Defendants | Civil Action No. 05-11672-WGY |

## OPPOSITION OF LIBERTY LIFE ASSURANCE COMPANY OF BOSTON TO PLAINTIFF'S MOTION FOR LIMITED PRE-TRIAL DISCOVERY RELATING TO THE SCOPE OF THE ADMINISTRATIVE RECORD

Defendant, Liberty Life Assurance Company of Boston ("Liberty Life")[1], hereby opposes Plaintiff's Motion for Limited Pre-Trial Discovery Relating To the Scope of the Administrative Record for the reasons set forth below.[2]

## I.    INTRODUCTION

On or about July 25, 2005, Plaintiff filed this action after his application for long-term disability benefits was denied based on an exclusion in the relevant policy for pre-existing conditions. He has brought claims in this case under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq. against AmerisourceBergen Corporation ("Amerisource"), his employer, the AmerisourceBergen Corporation Long Term Disability Plan ("the Plan"), and Liberty Life, the issuer of the long-term disability policy under the Plan. In his Complaint, Plaintiff's primary claim is against Amerisource under 29 U.S.C. §1132(a)(3)(B) for equitable

---

[1] Incorrectly named as Liberty Mutual Assurance Company of Boston.
[2] Plaintiff's motion is brought against all Defendants. Liberty Life hereby opposes the discovery requests against it, or seeks a protective order to prevent such discovery. Liberty Life opposes the requests for discovery against the Plan or Plaintiff's employer to the extent the discovery relates to or involves Liberty Life's review process.

relief. That claim is based on an alleged misrepresentation by Amerisource to Liberty Life regarding Plaintiff's "effective date of coverage" under the Plan on which Liberty Life allegedly relied in concluding that Plaintiff's claim was excluded by a pre-existing condition. Plaintiff brings an additional claim under 29 U.S.C. §1132(a)(1)(B) against Liberty Life and the Plan in which he contends that Liberty Life's decision to deny his claim for long-term disability benefits was unreasonable. Specifically, he contends that Liberty Life applied an incorrect "effective date of coverage" under the policy when applying the pre-existing condition exclusion.

Contrary to Plaintiff's claims, the decision to deny Plaintiff's request for benefits was more than reasonable based on the information before Liberty Life. The relevant policy contained the appropriate discretionary language requiring the Court to review Plaintiff's claim for benefits against Liberty Life under the "arbitrary and capricious" standard of review, as opposed to a de novo standard of review.

Plaintiff now moves, pursuant to the parties' Joint Statement for substantial pre-trial discovery from Liberty Life and Amerisource well beyond the confines of the administrative record. From Amerisource, Plaintiff seeks to obtain discovery and to depose witnesses related to the alleged misrepresentations. Specifically, he seeks information concerning Plaintiff's coverage under the Plan, including information relating to an acquisition agreement between Plaintiff's former employer, Telepharmacy Solutions, Inc. ("Telepharmacy") and Amerisource, which allegedly includes a provision explaining Plaintiff's "effective date of coverage" under the Plan. Liberty Life opposes these requests to the extent they relate to Liberty Life's review of Plaintiff's claim for long-term disability benefits. To the extent that any discovery of Amerisource is permitted, Liberty Life opposes the addition of any such discovery to the

administrative record as that discovery merely relates to Plaintiff's claim against Amerisource and is not relevant to Plaintiff's claim against Liberty Life.

From Liberty Life, Plaintiff seeks information relating to certain provisions in the policy and information from its underwriting department regarding these provisions as they relate to Plaintiff's claim.    Specifically, he seeks the production of "all internal rules, guidelines, protocols, memoranda, correspondence, or other documents that reference or interpret the "effective date of coverage" and "Associated Companies" provisions in the Plan and [sic] manner in which the provision should be interpreted or applied." Plaintiff also seeks documents that "guide Liberty employees' in determining a claimant's 'effective date of coverage.'" Finally, Plaintiff seeks "information from the Liberty Life underwriting department regarding the application of the underwriting guidelines." Along with these documents, he seeks to depose the underwriter at Liberty Life for Amerisource's policy.

Plaintiff's requests as they relate to Liberty Life should be denied, because such discovery is not relevant to his denial of benefits claim, the only claim pending against Liberty Life. The Court should limit its review of Liberty Life's decision to the administrative record that was before Liberty Life at the time that it rendered its decision. That administrative record has already been produced to Plaintiff and filed with the Court. Plaintiff's requests should also be denied because Plaintiff has failed to provide sufficient explanation as to why further discovery of Liberty Life is necessary.[3]

## II.    **FACTUAL BACKGROUND**

Plaintiff applied for long-term disability benefits through a policy of insurance administered by Liberty Life and sponsored by Plaintiff's employer, Amerisource, based on

---

[3] To the extent that the Court should grant any discovery to Plaintiff, Liberty Life reserves the right to seek discovery from Plaintiff.

alleged disabilities beginning on June 9, 2003. (AR 000260, 447). The effective date of the policy was July 1, 2002. (AR 000001). Plaintiff, a Senior Programmer, sought disability benefits on the basis that he was unable to work due to his alleged renal failure, diabetes, and hypertension.[4] (AR 000372, 447).

The policy under which Plaintiff seeks benefits includes a provision which includes a provision entitled the "Pre-Existing Condition Exclusion," which provides as follows:

Pre-Existing Condition Exclusion

This policy will not cover any Disability or Partial Disability:

1.    which is caused or contributed to by, or results from a Pre-Existing Condition; and

2.    which begins in the first 12 months immediately after the Covered Person's effective date of coverage

"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage. (AR 000026).

On or about October 28, 2003, Liberty Life, after a review of Plaintiff's claims file, denied Plaintiff's request for long-term disability benefits because it determined that his condition was excluded from coverage under the policy based on the pre-existing condition exclusion. (AR 0000260262). This denial was based on the records in the claims file, including a medical review by a nurse case manager at Liberty Life, who concluded, among other things, that Plaintiff received medical treatment within the three months prior to July 1, 2002[5], his "effective date of coverage" under the policy. (Id.). Further, Liberty Life's decision to deny

---

[4] The records from Plaintiff's employer also identify his job title as Vice President Software Development. (AR000280)
[5] Plaintiff does not dispute that the pre-existing condition exclusion bars his claim if his "effective date of coverage" was July 1, 2002.

Plaintiff's request for benefits was also based on information provided by Amerisource explaining that Plaintiff became eligible for the long-term disability plan on July 1, 2002. (AR 000265). Specifically, Paul Pescatore, Executive Vice-President at Telepharmacy, explained in a memorandum to Liberty Life that:

> Dr. Harold J. Liff has been an employee of Telepharmacy Solutions, Inc. since 1995. During that period he participated in the medical/dental insurance benefits provided by the company. These benefits did not include Long Term Disability. At the end of 2001, Telepharmacy Solutions was acquired by AmerisourceBergen and all employees of the company became AmerisourceBergen employees with an employee start date back to the original date of hire at Telepharmacy Solutions. On July 1, 2002 all Telepharmacy employees became eligible to partake of AmerisourceBergen benefits which included basic Long term Disability insurance. Dr. Liff thus became eligible and was enrolled in that Long Term Disability insurance plan. He did not take the buy-up coverage at that time nor during the year 2003.
> (AR 000265)

On or about April 19, 2004, Plaintiff, through his counsel, sent a letter to Liberty Life in which he appealed the decision. (AR 000255-256). In that letter, Plaintiff's counsel contended that Plaintiff's prior employer, Telepharmacy, was acquired by Amerisource in January 2001. (Id.). However, the acquisition agreement attached to Plaintiff's memorandum indicates that the acquisition took place in January 2002. He also contended that the terms of the acquisition agreement provided that Plaintiff became an employee of Amerisource at that time with his benefits calculated as if he had been an employee of Amerisource since 1995, when he was hired by Telepharmacy. (Id.). Contrary to Plaintiff's assertion in his memorandum, he did not request that Liberty Life review the actual terms of the acquisition agreement which was thought to support his claim. Significantly, Plaintiff signed the acquisition agreement himself and did not provide a copy to Liberty Life during the administrative review process.

Upon receipt of the April 19 appeal letter, Liberty Life conducted a further review and, on or about June 24, 2004, issued a written denial of benefits. (AR 000083-87). During its review on appeal, Liberty Life requested and received an independent medical review from Dr. John Holbrook, a physician specializing in internal medicine. (Id., 237-240). This physician concluded that Plaintiff had a pre-existing condition because he received treatment for the conditions on which his claim was based during the three months before the policy became effective. (Id.).

In addition, as part of its review on appeal, Liberty Life reviewed information from its underwriting department relating to Amerisource's policy. (AR 000083-87). This department confirmed that Amerisource had not added Telepharmacy as an "associated company" under its policy prior to July 2002. (Id.). It also reviewed census data which first listed Plaintiff as an employee of Amerisource in September 2002. (Id.). Also, Liberty Life found that Amerisource had not paid premiums prior to July 2002 for Mr. Liff, or other Telepharmacy employees, and that any credit by Amerisource for his service to Telepharmacy would only affect Plaintiff's eligibility waiting period, not the pre-existing condition exclusion under the policy. (Id.). Therefore, based on the claims file, which included this information, and the information previously provided by Mr. Pescatore, Plaintiff's appeal was denied.[6] (Id.).

As explained by Liberty Life in the final denial letter to Plaintiff, even if Amerisource had made an agreement with Plaintiff to provide him with service credit to his original date of hire with Telepharmacy, this could not make Liberty Life's decision in this case unreasonable. (AR 000083-87). Amerisource did not add Telepharmacy to its policy as an "associated company" and it had not paid premiums for Plaintiff prior to July 1, 2002. (Id.). Also, any

---

[6] Contrary to Plaintiff's assertion in his memorandum, Liberty Life does not concede that Plaintiff was "disabled."

- 6 -

agreement regarding service credit would only affect the eligibility waiting period, not the pre-existing condition exclusion. (Id.).

## III.    PROCEDURAL HISTORY

Plaintiff filed his complaint on or about July 25, 2005, asserting a claim under Section 502(a)(1)(B) of ERISA for wrongful denial of his long-term disability benefits, and a claim against Amerisource for equitable relief under Section 502(a)(3)(B).  Defendants filed their answers to Plaintiff's Complaint on September 26, 2005 and October 27, 2005, respectively, in which they denied the allegations.  The Court approved the parties' Joint Statement.  Consistent with the schedule in the Joint Statement, Liberty Life filed the administrative record with the Court on January 30, 2006.  This schedule provided that if Plaintiff sought discovery in this case, he had to file a motion with the Court "showing cause" for discovery.  Plaintiff subsequently filed the instant motion for substantial pre-trial discovery.

## IV.    SUMMARY OF ARGUMENT

Plaintiff's request for "limited" discovery from Liberty Life should be denied for several reasons.  First, since Liberty Life's decision to deny Plaintiff's request for benefits will be reviewed under the "arbitrary and capricious" standard, the Court is limited to the record that was before Liberty Life at the time that it made its decision.  In addition, Plaintiff has failed to present a reasonable basis for his need for the requested discovery or for his failure to submit the acquisition agreement during the administrative appeal process.  Plaintiff is barred by estoppel from seeking to add it now.   In essence, Plaintiff's claims are focused on alleged misrepresentations made by Amerisource to Liberty Life and to Plaintiff relating to the acquisition agreement between Amerisource and Telepharmacy.   Because Liberty Life appropriately relied upon representations by Amerisource, and on its own review of other

- 7 -

information relating to Plaintiff's "effective date of coverage," and because all of the information obtained by Liberty Life is contained in the claims file, Plaintiff's requests for discovery from Liberty Life should be denied.[7]

Moreover, Plaintiff has merely made blanket and overbroad requests for internal rules and guidelines and a deposition from Liberty Life, but has failed to provide a reasonable degree of particularity as to why this discovery is relevant, why reason exists to expect that the product of this voluminous discovery would be properly received at trial, and how this discovery would be material to the disposition of this case. In addition and contrary to his own assertions, Plaintiff has failed to show any inconsistencies in the record to warrant a need for such discovery.

Finally, the documents and deposition requested by Plaintiff are simply not relevant in this case. The decision to deny Plaintiff's application for benefits was based on the claims file, including documents relating to Plaintiff's "effective date of coverage," and relating to treatment he received during the three months prior to this date. Those documents are part of the administrative record, which has already been produced. As a result, no additional documents are necessary nor should they be included as part of the Court's review of the claim against Liberty Life.

Plaintiff contends that the acquisition agreement between Telepharmacy and Amerisource is somehow relevant to his claim for benefits in this case. However, that agreement did not involve Liberty Life or any of the terms of the policy issued by Liberty Life. Liberty Life is not responsible or bound by any such agreement. Moreover, the acquisition agreement does

---

[7] In addition, even if discovery were permitted, the information or documents received during discovery ultimately cannot be added to the record because the information is inadmissible. Therefore, discovery is fruitless and would merely cause unnecessary expense.

not explain or indicate that Plaintiff was somehow to receive a retroactive "effective date of coverage" under the policy issued by Liberty Life.

V.    **ARGUMENT**

A.    **Discovery Should Be Denied Because This Case Will Be Decided Under The "Arbitrary And Capricious" Standard of Review[8]**

In matters governed by ERISA, the standard of review directly impacts the scope of admissible evidence that may be considered by the Court. In turn, the scope of relevant evidence determines the appropriate scope of discovery to be engaged in by the parties. In this case, the applicable standard of review -- arbitrary and capricious/abuse of discretion -- mandates that the Court limit its review to the evidence presented to, and considered by, Liberty Life in making its determination. Therefore, discovery relating to Liberty Life into matters beyond verification of relevant plan documents and of the actual administrative record – as it stood at the time of the final determination – is irrelevant to the claim relating to Liberty Life and, accordingly, should be prohibited by the Court. For the same reasons, the Court also should reject any attempts to submit any evidence outside the administrative record and plan documents for purposes of trial or summary judgment.

1.    **Liberty Life's Determination of Plaintiff's Eligibility for Benefits Will Be Reviewed Under The "Arbitrary and Capricious" Standard**

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the United States Supreme Court held that "[c]onsistent with established principles of trust law, we hold that a denial of benefits under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

---

[8] Even if this case was somehow decided under the de novo standard of review, discovery should be denied for the reasons set forth in this opposition

eligibility for benefits or construe the terms of the plan." <u>Firestone</u>, 489 U.S. at 115. The law in the First Circuit is clear:   "[w]here a benefits plan grants discretionary authority to the plan administrator, [the First Circuit Court of Appeals] review[s] this administrator's decisions to determine whether they are arbitrary and capricious." <u>Sullivan v. Raytheon Co.</u>, 262 F.3d 41, 50 (1st Cir. 2001) (citing <u>Pari-Fasano v. ITT Hartford Life & Accident Ins. Co.</u>, 230 F.3d 415, 418 (1st Cir. 2000) and <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 40 (1st Cir. 1998)).   As explained in Defendants' motion regarding the scope of review in this case, such discretionary language is present. The Plan expressly states, at Section 7:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.   Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

Such language provides a clear grant of discretionary authority to Liberty Life, by allocating to it the right to make factual findings, to determine eligibility for benefits, and/or to interpret the terms of the Plan. <u>See Terry</u>, 145 F.3d at 37 (holding that Plan in that case properly granted discretionary authority to Plan Administrator, because it allocated to the Company the right to find necessary facts, determine eligibility for benefits, and interpret the terms of the Plan).

The "arbitrary and capricious" standard requires this Court to determine only whether a deciding administrator's decision is plausible in light of the record as a whole, or, put another way, whether the decision is within the administrator's authority, reasoned and supported by substantial evidence on the record, that is, evidence reasonably sufficient to support a conclusion. <u>See Pari-Fasano v. ITT Hartford Life & Accid. Ins. Co.</u>, 230 F.3d 415, 419 (1st Cir. 2000); <u>Sullivan v. Raytheon Corporation</u>, 262 F.3d 41, 50 (1st Cir. 2001), <u>cert. denied</u>, 534 U.S. 1118 (2002).

"Moreover, the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary." Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st 2001). Under this standard, "'a court is not to substitute its judgment for that of the [decision-maker].'" Terry v. Bayer Corporation, 145 F.3d 28, 40 (1st Cir. 1998). The deciding administrator's decision will be upheld if reasonable. See id.

Because this standard emphasizes reasonableness, the standard recognizes "that in order to find that an insurer had abused its discretion under the contract, [a court] would have to conclude that the insurer's eligibility determination was unreasonable in light of the information available to it." Pari-Fasano, 230 F.3d at 419.

## 2.     The Scope of Admissible Evidence Is Limited to the Administrative Record and Relevant Plan Documents

Under the arbitrary and capricious/abuse of discretion standard, it is well-settled that this Court's review of the denial of Plaintiff's claim for benefits is limited to the information available to, and considered by, Liberty Life at the time of the denial. See Doe v. Travelers Insurance Company, 167 F.3d 53, 58 and n. 3 (1st Cir. 1999); Jorstad v. Connecticut Gen'l Life Ins. Co., 844 F.Supp. 46, 56 (D.Mass. 1994)[9]. It is also well-settled that accepting additional records outside of the administrative record would "eviscerate the abuse of discretion standard, and in any case, is only justifiable where the decision itself was unreasonable or outside of a express grant of discretion. . ." Downey v. Aetna Life Insurance Company, 2003 U.S. Dist. LEXIS 8150, *38 (D.Mass. 2003).

The principle behind the rule that the Court's review is limited to the information available to Liberty Life at the time of its decision is not designed to create a stumbling block for

---

[9] See also Heller v. Fortis Benefits Ins. Co., 142 F.3d 487, 493 (D.C. Cir. 1998), cert. denied, 525 U.S. 930 (1998) ("Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum."(citing Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1455)).

ERISA participants and beneficiaries. Rather, it is a matter of carefully designed public policy intended to prevent the "transfer [of] the administration of benefit and pension plans from their designated fiduciaries to the federal bench." Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 and n.4 (4th Cir. 1985); see also Brown v. Seitz Foods, Inc. Disability Benefits Plan, 140 F.3d 1198, 1200 (8th Cir. 1998) (citations omitted) ("additional evidence gathering is ruled out on deferential review, and discouraged on de novo review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators"). In addition, a primary goal of ERISA was "to provide a method for workers and beneficiaries to resolve disputes over benefits *inexpensively and expeditiously.*" Taft v. Equitable Life Assurance Society, 1993 U.S. App. LEXIS 36315, *7-8 (9th Cir. 1994)(citations omitted)(emphasis supplied).

Here, Plaintiff attempts to circumvent this primary goal of inexpensive and expeditious resolution by contending that this case is somehow different than other disability benefits cases because it does not involve the reasonableness of Liberty Life's decision, but rather the accuracy of the "effective date of coverage" used to make that decision. See Plaintiff's memorandum at p. 3. However, in making this argument, Plaintiff concedes that his claim is against Amerisource for providing an allegedly incorrect date of coverage for Plaintiff to Liberty Life, and not a claim "about the reasonableness of [Liberty Life's] disability decision." Id. at p. 3. As such, his requests for discovery of Liberty Life relating to its review process are irrelevant to his claims in this case. To the extent that Plaintiff seeks discovery related to Liberty Life's review of his claim, this discovery is also irrelevant because all of the information relied upon by Liberty Life is contained in the administrative record. The First Circuit has held that fact-finding or evidence outside the Administrative Record is unnecessary where the record is sufficient to demonstrate a

reasonable basis for a benefits determination. See Doe, 167 F.3d at 58. In this case, the records in the claims file are sufficient to demonstrate a reasonable basis for the denial of Plaintiff's claim for benefits. As a result, discovery is unnecessary, and this Court should deny Plaintiff's motion.

Significantly, while arguing that this case is somehow different than other benefits cases, Plaintiff relies on "typical" disability benefits cases in which he alleges the courts permitted specific discovery relating to internal materials. The decisions in those cases, however, are fact-specific, and those facts are distinguishable from the case at bar.

### 3. Relevant Caselaw Illustrates That The Discovery Requested By Plaintiff From Libety Life Is Routinely Denied

Courts have routinely denied discovery requests similar to Plaintiff's requests relating to Liberty Life. See Orndorf v. Paul Revere Life Insurance Company, 404 F.3d 510 (1st Cir. 2005)(upholding denial of discovery on whether insurance carrier's staff and reviewers followed procedure because there was no serious claim of bias or procedural misconduct); Wilson v. Liberty Life Assurance Company of Boston, D. Mass., C.A. No. 03-10927-MEL (June 4, 2004) (attached hereto as Exhibit A) (denying discovery requests for internal manuals referencing or interpreting plan provisions and relating to review of claims, and requests relating to reviewing physicians because Plaintiff failed to show good cause or materiality of information requested). See Liston v. Unum Corporation, 330 F.3d 19 (1st Cir. 2003) (denying discovery requests seeking information regarding handling of similar claims by other participants); Downey v. Aetna Life Insurance Company, 2003 U.S. Dist. LEXIS 8150 (D. Mass. 2003)(denying discovery related to the plaintiff's conflict of interest argument). See also Steiner v. Hartford Life and Accident Ins., 2004 U.S. Dist. LEXIS 20022 (N.D.Cal. June 4, 2004) (denying discovery requests relating to claims manuals); Kaus v. Standard, 162 F.3d 1173 (10th Cir. 1998)

(denying discovery generally); <u>Maune v. International Brotherhood of Electric Workers</u>, 83 F.3d 959, 963 (8th Cir. 1996) (same).  <u>See also</u> United States District Court, District of New Hampshire Local Rule 9.4 (setting forth schedule for claims under 29 U.S.C. §1132(a)(1)(B) and prohibiting any discovery).

The First Circuit in <u>Liston</u> emphasized the rule that the review of a denial of benefits is limited to the claims file:

> The ordinary rule is that review for arbitrariness is on the record made before the entity being reviewed.  True, we have declined in cases like this one to adopt an ironclad rule against new evidence.  For example, discovery may be needed because the decisional process is too informal to provide a record.  And certain kinds of claims –e.g., proof of corruption – may in their nature or timing take a reviewing court to materials outside the administrative record.
>
> Still, at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator.  This is the view of virtually all of the circuits with the possible exception of the Fifth Circuit.  It is almost inherent in the idea of reviewing agency or other administrative action for reasonableness; how could an administrator act unreasonably by ignoring information never presented to it?
>
> Even where de novo review exists under ERISA, it is at least doubtful that courts should be in a hurry to consider evidence or claims not presented to the plan administrator. . .

<u>See</u> <u>Liston</u>, 330 F.3d at 23-24 (citations omitted).  In <u>Liston</u>, the Court held that where review is under the arbitrary and capricious standard, the ordinary question is whether the administrator's decision was reasonable.  <u>Id.</u> at 24.  The Court then held that the plaintiff's request for discovery regarding the treatment of similarly situated people was properly denied by the lower court.  <u>Id.</u> at 26.  In reaching this decision, the Court noted that such an issue "should be raised in the first instance during the claims process" and that a plaintiff must show that "the outcome of discovery would be helpful before she can get access to materials" that he/she seeks.  <u>Id.</u> at 25-26.  Here,

Plaintiff failed to raise his requests for the materials he now seeks during the claims process, and he has failed to show that the discovery would be helpful to his case. Therefore, his belated request should be denied.

Even though the general rule is that evidence outside the record should not be added, Liberty Life acknowledges that some Courts have permitted limited discovery in ERISA cases. Under certain circumstances, for instance, some courts have recognized an exception for discovery related to determining the appropriate standard of review. See also Wagner v. First UNUM Life Ins. Co., 2004 U.S. App. LEXIS 11632 at *2 n.1 (2d Cir. 2004) (citing Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 776 n.4 (8th Cir. 1998)). Ordinarily, however, even if such discovery is permitted, it is strictly limited in scope. See Farley, 147 F.3d at 776, n.4 (permitting "limited discovery for the purpose of determining the appropriate standard of review") (emphasis added).[10]

### 4.    Those Cases On Which Plaintiff Relies Are Inapplicable To The Case At Bar

Those cases on which Plaintiff relies to support his request for discovery are inapplicable and/or are miscited by Plaintiff. For instance, Plaintiff relies on Orndorf v. Paul Revere Life Insurance Co., 404 F.3d 510 (1st Cir. 2005) to support his contention that it is appropriate to supplement the administrative record with additional evidence relating to Liberty Life's review of his claim. See Plaintiff's memorandum at p. 10. In Orndorf, however, the First Circuit upheld the lower court's denial of Plaintiff's requests for discovery to determine whether the insurance

---

[10] Liberty Life also notes that many courts have held that depositions, like the deposition of Liberty Life's underwriter requested by Plaintiff, are inappropriate and impermissible because they are attempts to discover the mental processes of the plan administrator's claims handlers and medical consultants. Courts have noted that these depositions are inappropriate because the claim determination already reflects the rationale for discontinuing or denying the plaintiff's benefits. See Stanley v. Metropolitan Life Insurance, 312 F.Supp.2d 786 (E.D.VA. 2004)(citations omitted).

carrier followed its internal procedures, and if its staff were properly trained and qualified. See Orndorf, 404 F.3d at 520. In the instant case, Plaintiff disputes the "effective date of coverage" as represented by Amerisource, and as confirmed by Liberty Life. This dispute is on the merits, not the procedure followed, and, therefore, is not the type of dispute which permits discovery, according to Orndorf.

In his memorandum, Plaintiff also relies on Glista v. UNUM Life Insurance Company of America, 378 F.3d 113 (1st Cir. 2004), to support his argument that he is entitled to discovery of internal manuals. In Glista, the plaintiff sought to include specific guidelines and training materials from the defendant used to train its decision makers regarding a pre-existing condition exclusion and also sought to include related deposition testimony which she obtained during discovery. See Glista, 378 F.3d at 115. While the First Circuit determined that certain manuals and training material were relevant and admissible, the Court limited its holding throughout the decision. First, the Court noted at the beginning of its decision that it "decline[d] to adopt [a] hard-and-fast[] rule[] as to" whether the manuals and training material were admissible. Id. at 115. In addition, the Court acknowledged that "[t]he weight and admissibility of internal documents, whether those documents are offered in support of the interpretation of the plan administrator or that of the claimant, will vary with the facts of each case." Id. at 123. Finally, in deciding that such materials were admissible, the Court held that they were relevant to the interpretation of a specific clause in the policy relating to pre-existing conditions. Id. at 124.

Glista is therefore distinguishable from the case at bar. In Glista, the plaintiff disputed the interpretation of the pre-existing condition clause in the policy. Id. at 115. The dispute was based entirely on the interpretation of the clause, not the facts of the case or diagnosis of the plaintiff's condition. Here, Plaintiff disputes Liberty Life's determination of a factual issue - the

effective date of coverage. Liberty Life's evaluation was based on the information provided by Plaintiff's employer and information relating to Amerisource's policy, not necessarily on an interpretation of a policy provision. Indeed, the First Circuit itself noted this distinction in Glista when it explained that "[t]he documents [in the Glista case] shed light on the 'legal' rule the Plan applies, not the underlying facts presented to the Administrator." See Glista, 378 F.3d at 122-123.

Finally, in his memorandum, Plaintiff cites to Toland v. McCarthy, 499 F.Supp. 1183 (D.Mass. 1980). In Toland, the Court held that the decision of the trustees of a pension plan to deny benefits was not reasonable because they did not obtain critical information relating to the plaintiff's claim for pension benefits, such as information from the plaintiff's employer regarding his employment period and job classification. See Toland, 499 F.Supp. at 1190. Here, on the other hand, Plaintiff's claim is not about the reasonableness of the review by Liberty Life, but it involves the alleged misrepresentation by Amerisource, not Liberty Life, relating to his claim. In addition, unlike in Toland, Liberty Life obtained the critical information relating to Plaintiff's "effective date of coverage." As such, the discovery requests to Liberty Life are not relevant to this action.[11]

**C.    Plaintiff Is Not Entitled To Discovery Because He Has Failed To Present A Sufficient Cause For His Requests**

Plaintiff fails to meet his burden regarding his request for production of internal rules and guidelines from Liberty Life and his request to depose an underwriter at Liberty Life. Plaintiff's

---

[11] In his memorandum, Plaintiff also relies on several cases from other jurisdictions which allegedly hold that discovery may be permitted beyond the administrative record. Plaintiff mischaracterizes two of those cases, which, contrary to Plaintiff's assertion, did not permit discovery or even discuss when discovery may be permitted. See Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137 (11th Cir. 1989); Buckley v. Metropolitan Life Ins. Co., 115 F.3d 936 (11th Cir. 1997). Moreover, Plaintiff miscites Cerito v. Liberty Life Assurance of Boston, 209 F.R.D. 663, 664 (M.D.Fla. 2002). In that case, the Court did not hold that discovery may be permitted to determine "whether proper procedures were followed in compiling the record," or "whether the record is complete," as alleged by Plaintiff.

requests for certain internal documents should be denied, because the documents Plaintiff seeks are irrelevant to the determination made by Liberty Life in this case. Liberty Life concluded, based on the claims file and medical reviews, that Plaintiff received treatment for his conditions during the three month period preceding the "effective date of coverage." The claims file contains the only relevant material in this case.

Plaintiff contends that he is seeking discovery relating to "the contractual basis for Plaintiff's effective date of insurance as an acquired Telepharmacy employee." See Plaintiff's memorandum at p. 10. His requests, therefore, relate solely to his claim against Amerisource, which he contends misrepresented the terms of an acquisition agreement to Liberty Life as they relate to his "effective date of coverage." The representations by Amerisource to Liberty Life relating to Plaintiff's claim, however, are included in the claims file. In addition, the other information obtained by Liberty Life relating to Plaintiff's "effective date of coverage" is also included in the claims file. Liberty Life properly relied upon all of this information in reaching its decision.

Moreover, as explained by Liberty Life in the final denial letter to Plaintiff, even if Amerisource had made an agreement with Plaintiff to provide him with service credit to his original date of hire with Telepharmacy, this could not make Liberty Life's decision in this case unreasonable. Amerisource did not add Telepharmacy to its policy as an "associated company" and it had not paid premiums for Plaintiff prior to July 1, 2002. Also, any agreement regarding service credit would only affect the eligibility waiting period, not the pre-existing condition exclusion. These facts are documented in the claims file. Discovery relating to Liberty Life's internal procedures is not relevant in this case and would not assist the Court in its review of this claim.

- 18 -

Further, the alleged acquisition agreement attached to Plaintiff's memorandum and on which he relies was between Telepharmacy and Amerisource. That agreement did not involve Liberty Life or any of the terms of the long-term disability policy issued by Liberty Life. Liberty Life is not responsible or bound by any such agreement. Moreover, the acquisition agreement does not explain or indicate that Plaintiff was somehow to receive a retroactive "effective date of coverage" under the policy issued by Liberty Life. Finally, Plaintiff, who signed the agreement himself, failed to submit it during the review process and, therefore, is barred by estoppel from seeking to add it now.

In addition, Plaintiff's requests for information regarding Liberty Life's internal rules/guidelines and records relating to the application of the underwriting guidelines are overly broad and lack the necessary specificity to warrant consideration by this Court. Plaintiff does not limit his requests to a specific time period and he broadly requests all documents which "reference" two specific provisions in the policy. Similarly, he does not provide any explanation for the need for his broad request of "information from Liberty Life's underwriting department regarding the application of the underwriting guidelines. For these additional reasons, his discovery requests should be denied.

In summary, Plaintiff has failed to present compelling reasons why he should be allowed discovery in this matter of Liberty Life's internal rules/guidelines relating to certain policy provisions or relating to the underwriting department, and how the requested information would assist the court. Accordingly, Plaintiff has failed to show cause for his need for such information and the Court must deny his discovery request.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiff's Motion For Limited Pre-Trial Discovery Relating To The Scope Of The Administrative Record should be denied.

### REQUEST FOR ORAL ARGUMENT

Defendants hereby request oral argument on Plaintiff's Motion for Limited Pre-Trial Discovery and Defendants' opposition thereto, pursuant to Local Rule 7.1(D), to the extent the Court believes that a hearing on the motion would aid its decision in this matter.

Respectfully submitted,

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,
By its attorneys,

/s/ Richard W. Paterniti
Andrew C. Pickett, BBO# 549872
Richard W. Paterniti, BBO#645170
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

March 9, 2006

### CERTIFICATE OF SERVICE

This is to certify that on March 9, 2006, a copy of the foregoing document was electronically filed with the United States District Court for the District of Massachusetts through its Electronic Case Filing system.

/s/ Richard W. Paterniti
Jackson Lewis LLP

# EXHIBIT A

# E N D O R S E M E N T

PAMELA J. WILSON v. LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
03-CV-10927-MEL
_____

LASKER, D.J.

        Pamela Wilson ("Wilson") brings an ERISA action to
recover long-term disability benefits allegedly wrongfully denied
under an employee benefits disability plan issued by Liberty Life
Assurance Co. of Boston ("Liberty").  At issue is Wilson's motion
for limited pre-trial discovery and to clarify the parameters of
the administrative record.

        Although this is not a motion for summary judgment,
given the nature of Wilson's motion, it is reasonable that the
discovery principles propounded by Fed. R. Civ. P. 56(f) would be
applicable to this case.  To benefit from Rule 56(f), a party
must show: "authoritativeness, timeliness, good cause, utility
and materiality."  Resolution Trust Corps v. North Bridge Assoc.,
22 F.3d 1198, 1203 (1st Cir. 1994).  Wilson's motion fails to
demonstrate good cause for, and materiality of, the requested
discovery.

        Specifically, Wilson's arguments are unpersuasive in
explaining why the document requests and depositions would
produce facts that are necessary to supplement the administrative
record.  Neither do Wilson's contentions demonstrate a plausible
basis for believing that certain facts, if adduced, would
influence the outcome of the judicial review of the record.
Wilson simply presents an insufficient need to warrant the
extraordinary relief of discovery in an ERISA action.

        Accordingly, the motion is DENIED.

        It is so ordered.


Dated:     June 4, 2004
         Boston, Massachusetts     /s/ Morris E. Lasker
                                 U.S.D.J.